34

CRUM ET AL. *v.* MCCOY ET AL.

[Cite as Crum v. McCoy (1974), 41 Ohio Misc. 34.]

(No. 332989—Decided June 21, 1974.)

Franklin County Municipal Court.

*Mr. Robert W. Phillips,* for plaintiffs.

*Mr. Robert L. Herron,* for defendants and third party plaintiffs.

*Mr. William F. Brown* and *Mr. Charles E. Westervelt, Jr.,* for third party defendants.

WEST, J. The plaintiffs, Mr. & Mrs. Crum, bought from the defendants, Mr. & Mrs. McCoy, for $26,000, a farmhouse as a residence for themselves and their children.

The complaint alleged defendants had removed drapes

valued at $75 which under the terms of the contract were to be included in the sale. The complaint further alleged the defendants, with intent to mislead plaintiffs, failed to reveal hidden defects in the water supply system and in the sewage system and asked for $1,640.76 special damages and $5,000 punitive damages.

Defendant sellers answered denying the material allegations of the complaint and filed a third party complaint against the other four defendants who were the real estate salesmen and brokers involved in the transaction. The third party complaint alleges that all negotiations for sale of the real estate were conducted by the third party defendants who knew of the water pressure problem but failed to advise the buyers. The sellers asked for judgment against the real estate brokers and their salesmen for any amount that might be adjudged against the sellers in favor of the buyers.

The court had the assistance and cooperation of four very able lawyers who represented their clients well, presented their cases in an orderly manner, researched the law and submitted well prepared briefs with proposed findings of fact and conclusions of law. The work of these fine lawyers has been most helpful.

From the evidence the court finds that McCoys listed their property for sale with third party defendants, Westerville Realty and Leslie Goodman who is the principal of that firm. Mr. McCoy explained the problem with the water system. They had to go to Westerville to do their laundry, the pump frequently went dry and had to be primed and Mr. McCoy instructed that the truth be told about the water to prospective buyers as he did not want people lied to as he was.

Mr. Goodman noted on his house listing form and on his brokers information card: "Water pressure not sufficient for washer—storage tank could solve problem."

He prepared a listing card for the Multiple Listing Service but neglected to put any information on this card about the water problem. His explanation was that there was not enough room on the M. L. S. card.

Mr. & Mrs. McCoy and their five children aged 8 to 18 had lived in the subject property about five years. They never had any problems with the leach bed on the premises. Sewage backed up once, but they needed only the usual maintenance for cleaning the septic tank. They had a serious water problem. Flushing the toilet three times left them out of water and they could not take more than two showers in succession. They had a washer and dryer in the kitchen but not enough pressure to use the washer, so it was not connected. They did their washing at a laundromat in Westerville and dried it at home.

The water system included a well in the back yard approximately 68 feet deep in a pit with a lid covered by sod, a jet action pump and a 12 gallon storage tank located in the crawl space under the house which was reached through a closet in the bedroom. The pump ran constantly when water was being used, it worked well even when water in the well was low and it kept running even after it had pumped out all the water.

Plaintiffs, Mr. & Mrs. Crum, were selling their home through the third party defendant, Whit Dillon Realty, Inc. and its salesman, third party defendant Robert Jones. Plaintiffs were in the market for a rural home. Mr. Jones saw the M. L. S. card on the McCoy property and called Mr. Goodman to arrange for a showing. Mr. Goodman failed to impress on Mr. Jones that there was a water problem. Mr. Jones had only the information on the M.L.S. card which he showed to the buyer.

Plaintiffs were shown the McCoy home by Mr. Jones and took particular note of the nice drapes with ties and valance which complimented the house beautifully. The McCoys were not home at the time Mr. & Mrs. Crum looked at the property. Two of the McCoy children were there. Plaintiffs made what the court finds was a diligent inspection of the property. They saw the washer and dryer with a pile of clean laundry stacked on the washer. They did not notice the washer was not connected. Mr. Crum tried the water faucets, flushed the toilet twice, observed a satisfactory flow of water, noted it was

rusty but the toilet worked well. He did not locate the crawl space or the tank. He did locate the well but did not pull the lid and did not inspect the well or the pump.

The property was listed for $28,000 and through Mr. Jones, plaintiffs made an offer of $24,000. Third party defendant, Mr. Goodman, negotiated a counter offer from the McCoys of $26,000 which the buyers accepted.

The contract provided that the consideration shall include all drapes. The drapes, ties and valance were missing when the buyers took possession and some inappropriate drapes had been substituted. The court finds from the evidence the reasonable value of the drapes which were taken was $65.

The sellers never saw the buyers until the closing and there was no conversation then about the water problem. The third party defendant, Mr. Goodman, never had a direct conversation with the buyers but it was he the sellers entrusted with the duty to make known to the buyers the latent defect in the water system.

After the closing the buyers learned of the water problem. They sought the advice of experts to correct it and after running out of water and having to prime the pump eight times in a three week period they had another well dug which was deeper. Another pump was installed since the old one wasn't adequate for the deeper well. A new 42 gallon storage tank was installed. The cost of the new system was $1,207.90. Mr. Crum, as owner of the property, testified its value with the inadequate water supply was $24,800 but with an adequate system to supply ordinary household needs, the value was $26,000.

Mr. Crum admittedly was not an expert on real estate values as he was not in the real estate business, was not a trained appraiser and had owned only one piece of real property other than the one he bought from the McCoys. However, his estimate of the value was not contradicted by either of the two defendants who were in the real estate business.

Once the new water system was installed and there was an adequate flow of water, it was discovered the leach

bed would not handle it. The leach bed had to be replaced at the cost of considerable money, time and toil by Mr. Crum. The court finds the leach bed problem was unknown to the McCoys.

The contract included the following language: "The buyer has examined all property involved and, in making this offer, is relying upon such examination with reference to the condition, character and size of the land, improvements and fixtures." This language does not preclude an action for fraud and deceit.

The principle of *caveat emptor* applies to sales of real estate relative to conditions open to observation where those conditions are discoverable and the purchaser has the opportunity for investigation and determination without concealment or hindrance by the vendor. In such a case, the purchaser has no just cause for complaint even though there are misrepresentations by the vendor not so reprehensible in nature as to constitute fraud. *Traverse* v. *Long* (1956), 165 Ohio St. 249.

There is a duty historically imposed by law upon all persons that they measure their conduct by that of the ordinarily prudent person under all the circumstances, which include the risk of harm from the natural and probable consequences of that conduct.

The Crums had the duty to use diligence in inspecting the property before buying it. This the court finds they did.

The McCoys had a duty to tell the Crums about their water problems. Mr. McCoy was cognizant of this and delegated the duty to his agents, Westerville Realty and Mr. Goodman; but although they knew of the deficiency in the water system, they neglected to bring that important fact to the attention of the buyers. A principal is liable for a represenation or concealment by his agent amounting to constructive fraud where the agent was authorized to deal with the property in such manner that the principal should be bound in equity by the agent's statements. *Taylor* v. *Wilson* (1932), 44 Ohio App. 100.

We hold the vendors were guilty of constructive fraud in that their agents, Westerville Realty and Leslie Good-

man, acting within the scope of their authority, failed to make a disclosure of a known latent defect in the premises being purchased by plaintiffs, said defect being an inadequate water system for ordinary household purposes, a fault hidden from revelation by an inspection reasonably available to the vendees.

It is stated in 55 American Jurisprudence 962, Section 569:

"A purchaser of land who is induced to enter into the contract of purchase by the fraud or misrepresentations of the vendor or his agent or representatives has, as a general rule, an election to pursue one of several remedies. He may, despite the fraud, elect to affirm the contract, retain the property received under it, and bring an action at law for fraud and deceit against the vendor to recover the damages sustained by reason of the fraud or misrepresentations * * *."

To maintain an action for damages for deceit by reason of concealment, certain elements must be present. There must be (1) an actual concealment (2) of a material fact (3) with knowledge of the fact concealed (4) with intent to mislead another into relying upon such conduct (5) followed by actual reliance thereon by such other person having the right to so rely (6) with injury resulting to such person because of such reliance.

We find from the facts all the elements mentioned above. However, with respect to intent we find no malicious intent on the part of Westerville Realty and Leslie Goodman. Mr. Goodman was primarily concerned about closing the deal. The property had been shown several times with negative results and Mr. Goodman felt it necessary to talk with Mr. McCoy about the appearance of his garage and yard.

A real estate broker has implied authority to do any act or to make any declaration in regard to the property which is necessary to effectuate a purchase or sale or which is incidental thereto. 12 Corpus Juris Secundum 58, Brokers, Section 20; 8 Ohio Jurisprudence 2d 93, Brokers, Section 19.

A broker guilty of deceitful conduct constituting a

breach of his fiduciary duty, is liable to his employer for the damages occasioned by such misconduct, 8 Ohio Jurisprudence 2d 101, Brokers, Section 31.

Where the concealment from the vendee by a broker, of a latent defect in a property listed with him for sale is not done with malicious intent, there arises only a bare case of constructive fraud which does not warrant the assessment of exemplary damages.

A real estate broker with knowledge of a serious latent defect in property which has been listed with him has an obligation to use diligence to see that a buyer is informed of the defect, even though the buyer is the customer of a cooperating broker who gets his information concerning the property from a multiple listing service.

Judgment is hereby entered in favor of plaintiffs, Enos Crum and Diana S. Crum, against the defendants William E. McCoy and Betty McCoy for $1,265.

Judgment is hereby rendered in favor of third party plaintiffs William E. McCoy and Betty McCoy against third party defendants Westerville Realty and Leslie Goodman for $1200.

Costs taxed one half to William E. McCoy and Betty McCoy and one half to Westerville Realty and Leslie Goodman.

*Judgment accordingly.*