STONY RIDGE HILL CONDOMINIUM OWNERS ASSN., APPELLEE, *v.* AUERBACH ET AL., APPELLANTS.

(No. E-78-21—Decided January 12, 1979.)

*Murray & Murray Co., L.P.A.,* and *Mr. Patrick Murray,* for appellee.

*Flynn, Py & Kruse Co., L.P.A., Mr. John A. Coppeler* and *Mr. Elmer A. Bessick,* for appellants.

BROWN, J. Defendants Joseph Auerbach and Stony Ridge Hill Condominium, Inc., appeal from a judgment on a jury verdict in the sum of $14,543, as compensatory damages, and $4,125, as punitive damages, awarded to plaintiff, Stony Ridge Hill Condominium Owners Association.

Plaintiff, hereinafter designated as Owners Association, cross-appeals from a directed verdict in favor of defendants Louis Billetter and Paul Goodman.

Billetter, Goodman, and Auerbach are founders, sole shareholders, and officers of Stony Ridge Hill Condominium, Inc. (hereafter referred to as Stony Ridge), a corporation formed to build and sell condominiums. In 1971 and 1972, the corporation built and sold to 24 individual purchasers a 24-unit dwelling known as The Stony Ridge Hill Condominium, Building A, and a detached garage. The Owners Association consists of the current owners of the 24 units of Building A. The Owners Association brought suit against Billetter, Goodman, Auerbach, and Stony Ridge Hill Condominium, Inc., for the negligent construction of the roofs on Building A and the garage, for breach of implied and express warranties as to the roofs, for willful breach of contract, and for fraudulent misrepresentation. The Owners Association alleged that unit owners had been promised roofs for the dwelling and the garage which were of sufficient quality to last for 20 years, but that the roofs installed were defective "five-year roofs." They maintained that the garage roof leaked and the roof of the dwelling showed signs of rot.

Defendants' first assignment of error is as follows:

"The trial court erred in overruling the motion of defendants-appellants for a directed verdict at the close of all the evidence, and in overruling their motion for a judgment notwithstanding the verdict."

Under the umbrella of this assignment of error, defendants first contend that reasonable minds could only conclude upon all the evidence adduced that no actionable misrepresentation relating to the roofs was made by them. Specifically, defendants assert that their representation that the roof was a "twenty-year roof" involved a phrase with no specific factual meaning and that this term does not relate to a present or past fact.

This argument has no merit. Defendant Auerbach, in answer to a written interrogatory, and all the building experts who testified ascribed a specific meaning to the term "twenty-year roof," stating that the term referred to the quality of the roof as a present fact ascertainable at the time of the representation.

Defendants further contend and argue that the roofs installed for the condominium and garage buildings were sufficient to last for a period of twenty years or longer if they had

been properly maintained. This argument is without merit. Building experts, Ed Feick and Jim Blaine, gave credible testimony refuting this contention of defendants, amply supporting the resolution of this factual issue by the jury in favor of plaintiff. There is other corroborative evidence on this issue, also.

Next, defendants contend that there was no evidence that the alleged misrepresentation of a "twenty-year roof" caused any damage to the plaintiff. Specifically, defendants argue there was no evidence to prove a cause and effect relationship between the misrepresentation and the injury. 24 Ohio Jurisprudence 2d 740, Fraud and Deceit, Section 152. This contention is, likewise, without merit. The record contains abundant evidence that the plaintiff replaced the roof at a cost of $18,000, because it wore out in less than five years as a direct result of its incorrect application and its substandard materials, which did not fit the specifications for materials for a "twenty-year roof" as represented.

As part of the first assignment of error, defendants also contend that all 24 members of the Owners Association are not entitled to a recovery against the defendants for the alleged misrepresentations, which were made, if at all, to only a few of such members and at a time prior to the existence of the Owners Association. As part of this contention, defendants assert that only four unit owners of the 24 owners testified that they sustained damage as a result of the alleged misrepresentations pertaining to the "twenty-year roof," and that this does not mean that all 24 unit owners are entitled to recover for misrepresentation.

This contention and argument of defendants is without merit. It ignores the statute pertaining to condominium ownership. Pursuant to R. C. 5311.04(A), each and every owner of condominium property has an undivided ownership in the entire common area of the building and such common area includes the roof of the building. Each person who purchased a condominium unit, as a result of the misrepresentation, has a right to have the whole damage to the entire common area of the building remedied and completely satisfied.

Defendants' argument that 20 owners who did not testify concerning misrepresentation have no right to recover damages ignores the statutory right and remedy of the

Owners Association as a legal entity to sue defendants for the damage sustained by the condominium owners comprising the Owners Association.

R. C. 5311.20 authorizes the transfer of all causes of action pertaining to the common area of the building to the Owners Association:

"In any action relating to the common areas and facilities or to any right, duty, or obligation possessed or imposed upon the unit owners association, by statute or otherwise, the unit owners association may sue or be sued as a separate legal entity. In any such action, service of summons or other process may be made upon the unit owners association by serving the same personally upon the president or other chief officer thereof or upon the person named in the declaration as the person to receive service of process therefor, or by leaving the same at the residence or place of business of such person set forth in the declaration. Any such action brought by or on behalf of the unit owners association shall be pursuant to authority granted by its board of managers."

The Owners Association, on behalf of all unit owners and for each of them, is the proper party to bring an action for damages pertaining to the common area sustained by any or all of the unit owners. *Wittington Condominium Apartments, Inc.,* v. *Braemar Corp.* (Fla. App. 1975), 313 So. 2d 463. Payment by defendants of only one-sixth of the roof damage, representing the share of four unit owners, and the consequent repair of only one-sixth of the roof would still leave the roof in the same leaky condition, and would be the equivalent of giving plaintiff no legal remedy or relief whatever.

Lastly, as part of the first assignment of error, defendants contend that the Owners Association adopted and ratified the Declaration of Condominium Ownership and thereby released defendants from all liability to plaintiff and its members.

Defendants call attention to the first meeting of the Owners Association on January 27, 1973, when the Owners Association adopted a resolution which, *inter alia,* provided:

"Whereas, there is recorded in the office of the Recorder of Erie County, Ohio, in Volume 417 of Deeds, pages 904-937, both inclusive, an instrument entitled Declaration of Condominium Ownership for Stony Ridge Hill Condominium, Inc., followed immediately, on pages 938-967, both inclusive, by an

instrument entitled By-Laws of Stony Ridge Hill Condominium Owners' Association, Inc., incorporated as part and parcel of the Declaration, and as Exhibit B thereof; and

"Whereas, said instruments provide for the establishment of this present organization, Stony Ridge Hill Condominium Owners' Association, Inc., as is required for Ohio condominiums by Section 4311.08 [*sic*] of the Revised Code of Ohio; now, therefore,

"Be it Resolved, that Stony Ridge Hill Condominium Owners' Association, Inc., to the fullest extent possible under the law, accept, adopt, acknowledge, ratify, and confirm the terms and provisions of said Declaration and By-Laws, as and for, and if it be more accurate to say, in lieu and stead of, any Constitution, Code of Regulations, and By-Laws the Association might otherwise be empowered to adopt under the laws of Ohio, and as controlling over any and all of the present and future acts of the members, trustees (Managers), officers, agents, and employees of the Association."

Further, the Declaration contains the following statement:

"Neither Stony Ridge Hill Condominium nor its representatives * * * shall be liable for any claim whatsoever arising out of or by reason of any actions performed* * *in Stony Ridge Hill Condominium (or its representative's) capacity as developer, contractor, owner, manager or seller of the Condominium Property, whether or not such claim (1) shall be asserted by any Family Unit owner, occupant, the Association, or by any person or entity claiming through any of them; or (2) shall be on account of injury to person or damage to or loss of property wherever located and however caused; or (3) shall arise ex contractu or (except in the case of gross negligence) ex delicto. Without limiting the generality of the foregoing, the foregoing enumeration includes all claims for or arising by reason of, the Condominium Property or any part thereof being or becoming out of repair, or containing any patent or latent defects* * *."

The condominium Declaration and the By-Laws are not binding upon the Owners Association, or upon the unit owners for the following reasons. First, it is clear that R. C. 5311.20, empowering the Owners Association to sue pertaining to the common areas, is not subject to the provisions of the Declaration of Condominium Ownership and the By-Laws executed

and filed pursuant to R. C. Chapter 5311. Nowhere in R. C. 5311.20 is any reference made to declarations or bylaws. When the legislature intended that a statute in R. C. Chapter 5311 should be subject to the provisions of the declaration or bylaws, it expressly stated that legislative intent. See, *e.g.,* R. C. 5311.01(C), (D), and (G); 5311.14; 5311.16; 5311.17; 5311.18; and 5311.22.[2] Accordingly, the release of liability of defendants by the provisions of the Declaration is in conflict with R. C. 5311.20, and is, therefore, invalid.

The defendants did not comply with the following statutes regulating condominium ownership which are relevant to the rights of the plaintiff. R. C. 5311.06(A) provides as follows:

"All declarations shall be filed with the recorder of the county or counties in which the land described in the declaration is situated and by him recorded. All original declarations when filed shall have attached thereto a set of drawings of the condominium property, provided for in section 5311.07 of the Revised Code, and a true copy of the bylaws of the unit owners association, provided for in section 5311.08 of the Revised Code. Any amendment to the declaration by which changes are effected in the bylaws or drawings shall, when filed, have attached thereto a true copy of such change in the bylaws or drawings."

---

[2] Reference to the declaration or bylaws is made as follows in these statutes.

R. C. 5311.01 provides:

"(C) 'Declaration' means the instrument by which property is submitted to the provisions of Chapter 5311 of the Revised Code and any and all amendments thereto.

"(D) 'Common expenses' means those expenses designated as such in Chapter 5311 of the Revised Code and in or in accordance with the provisions of the declaration.

"****

"(G) 'Unit' means a part of the condominium property***and designated as a unit in the declaration and delineated on the drawings provided for in section 5311.07 of the Revised Code."

R. C. 5311.14 provides:

"(A) Unless provided otherwise in the declaration,***."

R. C. 5311.16 provides:

"Unless otherwise provided by the declaration or bylaws,***."

R. C. 5311.17 provides:

"(A) Unless otherwise provided by the declaration***."

R. C. 5311.18 provides:

"(A) Unless otherwise provided by the declaration or bylaws,***."

R. C. 5311.22 provides:

"(A) Unless otherwise provided in the declaration,***."

R. C. 5311.06(C) provides as follows:

"No interest in a unit shall be conveyed until the declaration, bylaws, and drawings, certified as provided in this section, have been filed for record. Errors or omissions in the declaration, bylaws, or drawings or a failure to file the same for record shall not, however, affect the title of a grantee of a unit."

In the case herein, seventy-five per cent of the entire condominium building was sold before construction was completed and the Declaration of Condominium Ownership was filed on May 26, 1972. Two or three units were sold even before construction commenced. The condominium unit owners did not buy the units either with actual or constructive notice of the Declaration.

For the foregoing reasons, the first assignment of error is not well taken.

Defendants' second assignment of error reads as follows:

"The trial court erred in overruling the motion of defendants-appellants for a new trial."

Under this second assigned error, defendants first advance the following proposition:

"Plaintiff Failed To Introduce Any Evidence As To The Difference In Value Of The Condominium Units If They Had Been As Represented And Their Value As Actually Conveyed, Which Is The Proper Measure Of Damages For Misrepresentations In Connection With The Sale Of Real Property."

Defendants, in support of this legal proposition, state the following legal principle: The measure of damages for fraud inducing the purchase of property is the difference between the property as represented and its actual value at the time of purchase. *Molnar* v. *Beriswell* (1930), 122 Ohio St. 348; *Wilchins* v. *Pool* (1971), 29 Ohio App. 2d 223; *Fiebig* v. *Brofford* (1950), 58 Ohio Law Abs. 494; 25 Ohio Jurisprudence 2d 35, Fraud and Deceit, Section 206.

The foregoing rule on measure of damages applies only to permanent damages. It does not apply to the case *sub judice* because the loss suffered by plaintiff by receiving a defective roof was of a temporary nature. Temporary damage is one which abates by the discontinuance of the wrong causing the damage, or which the owner by his act can abate. *Klein* v. *Garrison* (1951), 91 Ohio App. 418; 16 Ohio Jurisprudence 2d 84,

Damages, Section 67. The plaintiff can and has abated the wrong by completely replacing the roof.

For a temporary injury or damage to a building, the measure of compensatory damages is the reasonable cost of the restoration of the building to the condition it would have possessed if no wrong had been committed, plus the reasonable value of the loss of use of the building between the time of injury and restoration, unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the difference in the market value before and after the injury becomes the measure. *Northwestern Ohio Natural Gas Co.* v. *First Congregational Church of Toledo* (1933), 126 Ohio St. 140; *Ohio Collieries Co.* v. *Cocke* (1923), 107 Ohio St. 238, paragraph 5 of the syllabus; *Thatcher* v. *Lane Constr. Co.* (1970), 21 Ohio App. 2d 41.

Since neither party offered any evidence as to the difference in market value before and after the injury, the last part of the compensatory measure of damages definition pertaining to market value was not a factual issue and needed no jury instruction from the trial judge, nor consideration by the jury. Furthermore, counsel for both parties made no objection to the jury instruction, which confined the measure of compensatory damages to the cost of restoration. The defendants cannot now, in this court, for the first time, complain about the application of an improper measure of damages by the jury. See Civ. R. 51(A).

The next contention under this assignment of error is that there was no evidence to support an award of punitive damages. The award of $4,125.00, by the jury, as punitive damages is supported by the evidence in the record. A viable factual issue existed as to whether defendants' conduct constituted ill will, bad motive and an intent to defraud the plaintiff.

Defendants lastly argue that the trial court erred in refusing to submit to the jury written interrogatories offered by defendants which sought to discover whether the jury believed that the representation to four members of the plaintiff Owners Association that the two buildings had "twenty-year roofs" was, in fact, a misrepresentation.

The trial judge properly exercised judicial discretion in not submitting these interrogatories to the jury. The interrogatories concerned a probative or evidentiary matter. Interrogatories need not be submitted to the jury which are not answerable by the "'finding of a particular question of fact which is of an ultimate and determinative character and not merely of a probative or evidentiary nature.'" *Ragone* v. *Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St. 2d 161, 171; Civ. R. 49(B). Furthermore, the refusal to submit such interrogatories was not prejudicial to the defendants. The jury by awarding punitive damages to the plaintiff answered these interrogatories in a most emphatic manner. Lastly, although the transcript of proceedings reveals that defense counsel submitted the jury interrogatories to the trial court before closing argument, the transcript of proceedings does not contain such jury interrogatories as exhibits attached thereto or otherwise (see App. R. 9[A] and [B]), and for that reason may be disregarded.

Therefore, the second assignment of error is not well taken.

Plaintiff's sole assignment of error on cross-appeal is as follows:

"The trial court erred in directing a verdict for defendants Billetter and Goodman on the grounds that the builders had no legal obligation to the purchasers of the condominium units because they constructed the building for a corporation which the builders fully owned and managed."

The record contains ample evidence that defendants Billetter and Goodman acted as agents for the defendant corporation. The jury found that the corporation had committed a tort directly damaging the plaintiff. Individual defendants acting as agents or officers of a corporation while in the performance of their duties are liable individually, along with the corporation, for their tortious acts. 12 Ohio Jurisprudence 2d 461, 667, Corporations, Sections 362 and 544. Therefore, it was error for the trial court to direct a verdict in favor of defendants Billetter and Goodman. The plaintiff's sole assignment of error is well taken.

Plaintiff specifically requests that there be no reversal of the judgment on the jury verdict if plaintiff's assignment of error is well taken. This request will be heeded.

The judgment of the Erie County Common Pleas Court on the jury verdict is therefore affirmed.

*Judgment affirmed.*

POTTER, P.J., and CONNORS, J., concur.