ARBOR VILLAGE CONDOMINIUM ASSOCIATION et al., Appellants,

Davis et al.,

v.

ARBOR VILLAGE, LTD., L.P., et al., Appellees.

[Cite as *Arbor Village Condominium Assn. v. Arbor Village Ltd., L.P.* (1994), 95 Ohio App.3d 499.]

Court of Appeals of Ohio,
Franklin County.

No. 93APE10–1500.

Decided June 9, 1994.

500

*Susan Truitt Smith,* for appellants.

*McFadden, Winner & Savage* and *James S. Savage,* for appellees.

---

PETREE, Judge.

Plaintiffs, Arbor Village Condominium Association, David Morosky, Ronald L. Smith, David Yoder, Carol Kelly, Carla Pomeroy, James and Jacqueline Goldson, Nick Colley, Michael Martinelli, Athena Jones, John Stomps, Helen M. Van-Heyde, Clyde Gaston and Jim Miller appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment for defendants, Arbor Village Limited, Larry Frazier, Max Holzer, Bernard Fultz, Edward Bacome, Real Property Management, Inc., and Dwight Penn. Plaintiffs assert the following eight assignments of error on appeal:

"[I.] The trial court erred in not adhering to the stringent standards set forth in Ohio Civil Rule 56.

"[II.] The trial court erred in holding that appellants Smith, Morosky, Yoder and Kelly's claims under R.C. Chapter 5311 were time-barred by holding that their cause of action accrued in 1984.

"[III.] The trial court erred in holding that the appellant Arbor Village Condominium Association had no standing to pursue a cause of action under R.C. § 5311.26 and § 5311.27.

"[IV.] The trial court erred in holding that the appellant association lacked standing to pursue the fraudulent concealment and fraudulent misrepresentation claims.

"[V.] The trial court erred in granting summary judgment as it related to plaintiffs' claims for fraudulent concealment.

"[VI.] The trial court erred in granting appellees' motion for summary judgment as it relates to the claims against Mr. Fultz.

"[VII.] The trial court erred in granting appellees' motion for summary judgment as it relates to the claims against Mr. Penn.

"[VIII.] The trial court erred in holding that privity was a requirement for the claims of appellants Jim and Jackie Goldson, Pomeroy, Van Hyde, Jones, Stomps and Colley."

In 1979, defendant Arbor Village Ltd., an Ohio limited partnership, was formed to convert existing apartments located at 4991 and 5003 Arbor Village Drive into a condominium development and then sell them. Defendants Max Holzer, Larry Frazier and Bernard Fultz are or have been general partners of Arbor Village, Ltd. Defendant Real Property Management, Inc., the management company responsible for the management of Arbor Village, is owned by defendant Dwight Penn. Defendant Edward Bacome represented Arbor Village, Ltd. in negotiating the sale of sixty-five Arbor Village condominium units to two groups of investors assembled by plaintiff Ronald Smith.

Arbor Village consists of eighty-four units in two separate buildings, 4991 and 5003 Arbor Village Drive. Both buildings were constructed at the same time and in the same manner in 1964. In 1983, repairs were made to the pipes carrying hot water to the units in the 4991 Arbor Village Drive building. These repairs were made by a plumbing company, J.A. Myers, at a cost of $9,000, and involved replumbing the water piping system so that the pipes would be relocated above ground.

In June 1984, plaintiffs Smith, Morosky, Yoder and Kelly purchased thirty Arbor Village condominium units from Arbor Village, Ltd. All of the units

purchased in 1984 were located in the 5003 Arbor Village Drive building. In their purchase contracts, each investor acknowledged that they "have inspected the Unit and the Common Areas and are buying the Unit and its interest in the Common Areas in their present condition without warranty or representation of any kind, except as expressly provided therein." The sale of these units closed in August 1984.

Prior to the 1984 sale, Arbor Village, Ltd. provided a disclosure statement to the investors as required by R.C. Chapter 5311. This statement was prepared and distributed by defendant Bacome and represented, among other things, that the "water piping for heating system" was eighteen years old, in "satisfactory" condition, with a remaining useful life of eighteen years. The disclosure statement did not contain any statements regarding the 1983 repairs made to 4991 Arbor Village Drive.

Thereafter, in 1985, plaintiff Smith and a second group of investors decided to purchase the remaining thirty-five condominium units owned by Arbor Village, Ltd. This second group of investors consisted of plaintiffs Smith, Morosky, Yoder, Martinelli and Gaston. Unlike plaintiffs' 1984 purchase, the units purchased in 1985 were located in both the 4991 and 5003 Arbor Village Drive buildings. The 1985 purchase contracts contained language identical to that of the 1984 purchase contracts with regard to inspection and purchasing the units in their present condition. The 1985 disclosure statement prepared and distributed by defendant Bacome on behalf of Arbor Village, Ltd. represented, among other things, that the "water piping for heating system" was twenty-one years old, in "satisfactory" condition, with an "indeterminate" remaining useful life. The sale of these units closed in October 1985.

The remaining individual plaintiffs, James and Jacqueline Goldson, Pomeroy, Colley, Jones, Stomps, Miller and VanHeyde each purchased their units from someone other than Arbor Village, Ltd. Plaintiff Arbor Village Condominium Association is comprised of all owners of units in Arbor Village; however, no units are owned by Arbor Village Condominium Association.

Plaintiffs became aware of a problem in the heating and domestic hot water system in 1988. Plaintiffs filed a complaint in the Franklin County Court of Common Pleas on October 17, 1990, asserting claims for violation of R.C. 5311.26 of the Ohio Condominium Act, fraudulent misrepresentation and fraudulent nondisclosure, and breach of contract and breach of the implied warranty of fitness.

Defendants argued in their August 19, 1992 motion for summary judgment that they were entitled to summary judgment on the following grounds: (1) against the individual plaintiffs who purchased their condominium units from someone other than defendants; (2) defendant Penn did not sell or represent a seller in

either the 1984 or 1985 sale of the condominium units; (3) defendant Fultz was liable only as a general partner of Arbor Village, Ltd., if and when judgment was rendered against the limited partnership and the limited partnership's assets were insufficient to satisfy the judgment; (4) Arbor Village Condominium Association was not a purchaser of a condominium ownership interest; (5) the R.C. 5311.27 claims of plaintiffs Smith, Morosky, Yoder and Kelly were time barred; (6) plaintiffs' claims for breach of the implied warranty of fitness were barred by the "as is" disclaimer in the purchase agreement; and (7) there was no evidence of reliance on a material misrepresentation or an active concealment of any defects.

In its July 16, 1993 decision, the trial court sustained defendants' motion as to all claims except plaintiffs' claim for fraudulent misrepresentation. The court's decision was entered on October 1, 1993. On that same date, plaintiffs filed a "Notice of Dismissal Without Prejudice" as to all claims remaining after the court's decision. Plaintiffs have timely appealed the trial court's judgment.

Civ.R. 56(C), which deals with a trial court's examination and disposition of a motion for summary judgment, provides:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor * * *."

Pursuant to Civ.R. 56(C), a trial court may grant a motion for summary judgment only when there exists no genuine issue of material fact for the trier of fact and the moving party is entitled to summary judgment as a matter of law. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267. Additionally, a party who opposes a motion for summary judgment may not rest upon the allegations or denials of his pleadings but must affirmatively demonstrate existence of a genuine issue of material fact in order to prevent the granting of a motion for summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798.

In a motion for summary judgment, the burden of establishing that the material facts are not in dispute and that no genuine issue of fact exists is on the

party moving for summary judgment. *Mitseff, supra,* at 115, 526 N.E.2d at 801–802. The party opposing the motion then has the burden of producing evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (*Celotex Corp. v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed).

Summary judgment will be granted only after construing the evidence most strongly in favor of the nonmoving party, and only where the nonmoving party fails to establish an essential element to its case and upon which it will bear the burden of production at trial. *Celotex, supra,* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

Because the contentions raised in the first assignment of error will be resolved by our disposition of the remaining assignments of error, we will not address this assignment of error individually; rather, we will address it within the context of the other assignments of error.

In the second assignment of error, plaintiffs argue that the trial court erred in holding that their R.C. Chapter 5311 claims were time-barred. Ohio's condominium laws, codified in R.C. Chapter 5311 *et seq.,* clearly make it a statutory violation to fail to provide full and accurate information on a required disclosure statement regarding the sale of condominium property.

The statute at issue, R.C. 5311.26, provides, in pertinent part:

"No developer or agent, directly or indirectly, shall sell or offer to sell a condominium ownership interest in a condominium development unless he discloses fully and accurately to each prospective purchaser of the interest all material circumstances or features affecting the development, by preparing and providing to each prospective purchaser a readable and understandable written statement of such circumstances or features. The statement shall not intentionally omit any material fact or contain any untrue statement of a material fact * * *."

R.C. 5311.26(G) further provides:

"In the case of a conversion condominium development a report by the developer stating the age, the condition and the developer's opinion of the remaining useful life of structural elements and mechanical and supporting systems, together with the developer's estimate of repair and replacement costs projected for five years from the date the property is submitted to the provisions of this chapter; the report shall be based on facts reasonably ascertainable by the developer through inspection of relevant drawings and records and to the extent permitted by the physical limits of the site by personal inspection of the elements and systems * * *."

It is undisputed that the six-year limitation period set forth in R.C. 2305.07 controls the R.C. Chapter 5311 claims in this case.[1] R.C. 2305.07 provides that an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty shall be commenced within six years after the cause of action accrues. The trial court cited *Squire v. Guardian Trust Co.* (1947), 79 Ohio App. 371, 35 O.O. 144, 72 N.E.2d 137, for the proposition that in the case of a statutory violation, the cause of action accrues when the violation of the statute occurs. Thus, the trial court held that, because plaintiffs Smith, Morosky, Yoder and Kelly were provided the allegedly misleading disclosure statements in June 1984, but failed to commence their R.C. Chapter 5311 action until October 17, 1990, more than six years from the date of the purchase of the thirty units and of the alleged violation of the statute, the action was time-barred.

█ Plaintiffs contend that the trial court's holding is in error in two respects. First, plaintiffs assert that the applicable accrual date for their claims arising under R.C. 5311.26 is 1988, the year plaintiffs first discovered the heating system defect in the pipes. Therefore, because they were incapable of acquiring knowledge of the defect prior to 1988, they would have had no way of asserting a cause of action for an alleged violation of R.C. 5311.26 prior to 1988. Thus, plaintiffs urge this court to apply the so-called "discovery rule" to the instant case, thereby tolling the running of the six-year statute of limitations until that time when they knew or should have known that the disclosure statements were inaccurate and untrue. We are unpersuaded by plaintiffs' argument regarding this issue and adhere to the general rule that the "statute of limitations commences to run at the time the cause of action accrues * * *. The cause of action accrues * * * in the case of statutory actions when the violation of the statute occurs." *Squire, supra,* 79 Ohio App. at 383, 35 O.O. at 149, 72 N.E.2d at 145.

R.C. 5311.27 provides a statutory remedy for violations of R.C. 5311.25 and 5311.26. R.C. 5311.27(A) states that "[i]n addition to any other remedy available," a purchaser may rescind a sales contract. R.C. 5311.27(B) permits a purchaser to bring an action against a developer or agent for violating R.C. 5311.25 or 5311.26 and sets forth that the developer or agent shall be liable for

---

1. Plaintiffs challenge the constitutionality of the trial court's application of R.C. 2305.07 to their R.C. 5311.26 and 5311.27 claims for the first time in their reply brief to this court. Without considering the issue on its merits, we find that it is not reviewable in this appeal. In *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, the Supreme Court held that the failure to raise the constitutionality of a statute at the trial court level, when that issue is apparent at the time of trial, constitutes a waiver of that issue. While we are mindful that the waiver doctrine of *Awan* is discretionary, *In re M.D.* (1988), 38 Ohio St.3d 149, 527 N.E.2d 286, we decline to consider the issue at this time.

the difference between the amount paid and either: (1) the fair market value of the interest at the time the action is commenced; (2) the price at which the interest is disposed of in a fair market transaction before the action is commenced; (3) the price at which the interest is disposed of in a fair market transaction after the action is commenced, but before judgment is rendered; or (4) $500 per each violation, whichever is greater. Finally, R.C. 5311.27(C) provides an avenue for redress through the Attorney General.

The remedies provided in R.C. 5311.27 persuade this court that the legislature did not intend that a cause of action arising under this section be tolled until actual discovery of a defect in the condominium property. The measure of damages afforded by the statute is limited to the difference between the fair market value of the purchased interest and what the purchaser actually paid for the interest. The statute is silent as to any remedies for the recovery of the cost of repairs. Any consequential damage must be recovered through a common-law remedy. Furthermore, we find that the nature of a claim arising under this statute makes the alleged act of nondisclosure or misleading disclosure presently injurious at the time of sale. In other words, the damages are sustained at the time of sale, not at the time a defect in the premises may be discovered.

In the instant case, plaintiffs Smith, Morosky, Yoder and Kelly allege that defendants' violation of R.C. 5311.26 in connection with the 1984 condominium purchase occurred in June 1984, when the disclosure statements were provided to them as part of the sale of the first thirty condominium units. Accordingly, we find that the statute of limitations began to run in June 1984 and that plaintiffs had until June 1990 to commence their suit with regard to their 1984 claims. Thus, plaintiffs Smith, Morosky, Yoder and Kelly's October 1990 complaint failed to meet the six-year statute of limitations as set forth for such statutorily created causes of action.

■ Plaintiffs next assert that the trial court erred in holding that the cause of action arising out of defendants' alleged statutory violation of R.C. 5311.26 in providing fraudulent disclosure statements to plaintiffs Smith, Morosky, Yoder and Kelly in 1985 were also time-barred.[2] Plaintiffs contend that since the disclosure statements were altered by defendants between 1984 and 1985, this emphasized the distinct and individual nature of the two separate causes of action. Defendants argue that since the alleged statutory violation first occurred

---

2. A review of the trial court's decision reveals that the court did not discuss the disclosure statements provided to plaintiffs Smith, Morosky, Yoder, Martinelli and Gaston in 1985. The court stated only that plaintiffs Smith, Morosky, Yoder and Kelly's June 1984 causes of action were time-barred due to their failure to bring their actions alleging violation of R.C. 5311.26 until October 1990.

in June 1984, over six years before plaintiffs commenced the instant action, the alleged statutory violation that occurred in 1985 is irrelevant.

We find plaintiffs' contention to be well taken. The cause of action arising from the alleged statutory violation in 1985 was separate and distinct from the 1984 cause of action. The 1984 and 1985 disclosure statements provided slightly different information. Plaintiffs Martinelli and Gaston were not involved in the 1984 purchase; therefore, it cannot be said that their cause of action arose in 1984. As to those plaintiffs who were involved in both the 1984 and 1985 purchases, we hold that the disclosure statements provided to them in 1984 were separate and distinct from the disclosure statements provided in 1985, thus providing them with two distinct causes of action. Were we to hold otherwise, these plaintiffs would be forever barred from asserting a cause of action for a violation of R.C. 5311.26, no matter when they subsequently purchased units in this particular development. Plaintiffs Smith, Morosky, Yoder, Martinelli and Gaston allege that defendants' violation of R.C. 5311.26 in connection with the 1985 condominium purchase occurred in 1985, when the disclosure statements were provided to them as part of the sale of the second thirty-five condominium units. Accordingly, we find that the statute of limitations began to run in 1985 and that plaintiffs' October 1990 filing of the complaint met the six-year statute of limitations as set forth for such statutorily created causes of action.

Thus, we find the second assignment of error to be well taken as to the 1985 disclosure statement, but not well taken as to the 1984 disclosure statement.

■ By the third assignment of error, plaintiffs contend that the trial court erred in holding that Arbor Village Condominium Association lacked standing to pursue a cause of action under R.C. 5311.26 and 5311.27. The trial court held that under R.C. 5311.27(B) only purchasers of condominium ownership interests may bring suit against a developer or agent for violation of R.C. 5311.26, and, since the association was not a purchaser of an interest, it could not bring such an action. R.C. 5311.27(B) states, in pertinent part:

"Any developer or agent who sells a condominium ownership interest in violation of section 5311.25 or 5311.26 of the Revised Code shall be liable to the purchaser * * *."

We do not agree with the trial court's construction of R.C. 5311.27(B). The statute, by its own terms, does not require that the entity bringing an action under R.C. 5311.27(B) actually *be* a purchaser; rather, the statute states only that a developer or agent who sells a condominium ownership interest will be *liable* to a purchaser if it is determined that the developer or agent has violated R.C. 5311.25 or 5311.26. Nor does the statutory language require that the entity commencing the action have a "condominium ownership interest."

Furthermore, R.C. 5311.27(B) must be read *in pari materia* with R.C. 5311.20, which states, in pertinent part:

"In *any* action relating to the common areas and facilities or to any right, duty, or obligation possessed or imposed upon the unit owners association, by statute or otherwise, the unit owners association may sue or be sued as a separate legal entity * * *." (Emphasis added.)

It is apparent from the face of the statute that the General Assembly intended that the unit owners association be empowered to sue or be sued in "any action relating to the common areas and facilities." No language purporting to limit such an association's right to commence an action regarding the common areas appears anywhere in R.C. 5311.20.

The association's claims under R.C. 5311.26 relate specifically to the alleged inaccuracies and misrepresentations regarding the condition of the heating system piping, which is clearly a "common area and facility" as defined in R.C. 5311.01(B)(2)(d), which states:

"(B) 'Common areas and facilities' includes * * * the following parts of the condominium property:

" * * *

"(2) All other areas, facilities, places, and structures that are not part of a unit, including, but not limited to:

" * * *

"(d) Installations of central services such as power, light, gas, hot and cold water, heating, refrigeration, air conditioning, and incinerating."

Thus, the association may properly pursue an action under R.C. 5311.26 because the action arises directly from defendants' alleged misrepresentations regarding the heating system pipes, a common area and facility.

Furthermore, in *Stony Ridge Assn. v. Auerbach* (1979), 64 Ohio App.2d 40, 18 O.O.3d 26, 410 N.E.2d 782, the Erie County Court of Appeals determined that, pursuant to R.C. 5311.20, the condominium unit owners association, on behalf of all unit owners and for each owner individually, was the proper party to commence an action for damages pertaining to the common areas sustained by any or all of the unit owners.

In the instant case, defendants' alleged violation of R.C. 5311.26 concerns the common area of the heating system. When read together, it is clear that R.C. 5311.20 and 5311.26 contemplate a unit owners association's standing to bring an action under R.C. 5311.26. Therefore, we find plaintiffs' third assignment of error well taken.

■ In the fourth assignment of error, plaintiffs contend that the trial court erred in holding that the association had no standing to pursue the fraudulent concealment and fraudulent misrepresentation claims. In its decision, the trial court held that the association could not bring suit under R.C. 5311.26; however, the trial court failed to address the association's standing to sue as to its claims for fraudulent misrepresentation and fraudulent concealment. It is clear from our determination of plaintiffs' third assignment of error that the association had standing to commence an action for fraudulent concealment or fraudulent nondisclosure, as those claims related to the common areas of the condominium development. *Stony Ridge, supra.* Thus, we find plaintiffs' fourth assignment of error well taken.

■ In the fifth assignment of error, plaintiffs contend that the trial court erred in granting summary judgment regarding plaintiffs' claims for fraudulent concealment. The trial court found "no evidence of any active concealment on the part of defendants as to the alleged defects in the heating and domestic hot water system." The elements necessary to successfully maintain an action for fraudulent concealment were set forth in *Crum v. McCoy* (1974), 41 Ohio Misc. 34, 39, 70 O.O.2d 76, 79, 322 N.E.2d 161, 165, as follows:

" * * * (1) an actual concealment (2) of a material fact (3) with knowledge of the fact concealed (4) with intent to mislead another into relying upon such conduct (5) followed by actual reliance thereon by such other person having the right to so rely (6) with injury resulting to such person because of such reliance."

■ Initially, we note that there was no evidence presented to establish that the defendants had taken any steps to actively conceal the repairs made to the heating system in 4991 Arbor Village Drive. If there appears no evidence of an intent to conceal or any evidence of acts performed to effect that intent, a seller cannot be liable for fraudulent concealment. *Kaye v. Buehrle* (1983), 8 Ohio App.3d 381, 8 OBR 495, 457 N.E.2d 373. However, it is well stated that in the sale of real estate, there will be a finding of fraudulent concealment when a vendor does not reveal to a buyer sources of peril of which he knows and which are not discoverable by the buyer. *Klott v. Associates Real Estate* (1974), 41 Ohio App.2d 118, 121, 70 O.O.2d 129, 131, 322 N.E.2d 690, 692. Nondisclosure will become the equivalent of fraudulent concealment when the duty to speak arises in order to place the other party on equal footing. *Mancini v. Gorick* (1987), 41 Ohio App.3d 373, 374, 536 N.E.2d 8, 9–10, citing 50 Ohio Jurisprudence 3d (1984) 431, Fraud and Deceit, Section 78.

Plaintiffs contend that defendants' nondisclosure of the repairs made to the heating system in 4991 Arbor Village Drive prior to plaintiffs purchase of the condominium units in 1984 and 1985 amounts to fraudulent concealment. In

*Miles v. McSwegin* (1979), 58 Ohio St.2d 97, 12 O.O.3d 108, 388 N.E.2d 1367, the Ohio Supreme Court held that a seller who is under a duty to disclose facts and fails to do so will be held liable for any damage directly and proximately resulting from the seller's failure to disclose such facts. However, we are also mindful of the fact that a seller incurs such liability only if he is under a duty to disclose the matter in question. 3 Restatement of the Law, Torts 2d (1977) 119, Section 551. Indeed, Comment *j* to Section 551 of the Restatement states:

" * * * If the parties expressly or impliedly place the risk as to the existence of a fact on one party or if the law places it there by custom or otherwise the other party has no duty of disclosure * * *." *Id.* at 123.

Upon review of the purchase contracts in the instant case, we find that the contracts clearly place the risk upon plaintiffs as to the existence of any defects. Plaintiffs executed purchase contracts containing the following language:

"13. *Limited Warranty.* In the development statement furnished to the Buyers is a statement of the limited warranties to be given to Unit purchasers. These warranties will be extended to Buyers at the time of the closing. *Seller disclaims any and all warranties other than as set forth in seller's limited warranty.* Further, Buyers hereby acknowledge that they have inspected the Unit and the Common Areas and are buying the Unit and its interest in the Common Areas in their present condition without warranty or representation of any kind, except as expressly provided therein." (Emphasis *sic.*)

It has been stated that the terms "as is" and "in its present condition" are synonymous. *Vilk v. Radley* (Aug. 18, 1989), Lake App. No. 13–087, unreported, 1989 WL 95775. Plaintiff Smith offered testimony at his deposition that he "understood that he was buying the units as is."

Plaintiff Smith further testified at his deposition that plaintiffs neither hired an expert to inspect the premises nor did they obtain an appraisal of the development prior to the purchase of the units. Accordingly, we find the defendants had no duty to disclose any knowledge of any past repairs made to 4991 Arbor Village Drive. Thus, we find plaintiffs' fifth assignment of error not well taken.

 In the sixth assignment of error, plaintiffs contend that the trial court erred in granting summary judgment to Bernard Fultz, the general partner of Arbor Village, Ltd. at the time of the sale. As a general partner of a limited partnership, R.C. 1775.14 of Ohio partnership law applies to Fultz through R.C. 1782.24(A) of Ohio limited partnership law. R.C. 1782.24(A) states that a general partner in a limited partnership is subject to all the liabilities of a partner in a partnership without limited partners. R.C. 1775.14 states that partners are liable as follows:

"(A) Jointly and severally for everything chargeable to the partnership under sections 1775.12 and 1775.13 of the Revised Code * * *.

"(B) Jointly for all other debts and obligations of the partnership * * *."

R.C. 1775.12, referenced above, states:

"Where loss or injury is caused to any person not a partner in the partnership or any penalty is incurred, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his partners, the partnership is liable therefor to the same extent as the partner so acting or omitting to act."

The trial court determined that, pursuant to R.C. 1775.14, defendant Fultz could be held jointly and severally liable upon the obligation of defendant Arbor Village, Ltd. should judgment be rendered against the partnership in the action. The trial court further found, however, that before defendant Fultz could be held responsible for the partnership obligations, judgment must first be rendered against the partnership. If the partnership assets were found to be insufficient to meet the obligations, then, and only then, would defendant Fultz be made subject to judgment and his assets reached. The trial court thus deemed the action against defendant Fultz to be premature.

We reach the same conclusion as the trial court; however, we apply a slightly different rationale to attain that conclusion.

Upon our reading of R.C. 1775.14, we find that defendant Fultz's liability is not joint and several as the trial court determined; rather, his liability is joint only. Under R.C. 1775.14(A), only liabilities specifically listed in R.C. 1775.12 or 1775.13 are "joint and several." It is undisputed that R.C. 1775.13 does not apply to the instant action. Therefore, we must look to the language of R.C. 1775.12 as it applies to the instant action to determine whether defendant Fultz's liability is "joint and several" or "joint" only.

None of plaintiffs' claims in the instant action is based on any "wrongful action or omission" of a partner. Instead, plaintiffs have alleged that the partnership, through the acts of its agent defendant Bacome, have committed a wrong in its alleged failure to disclose certain repairs made to 4991 Arbor Village Drive. However, there is no allegation that defendant Fultz, the only general partner of Arbor Village, Ltd., has committed any wrongful act or omission. As a result, we find that because there is no "wrongful act or omission of any partner" to trigger R.C. 1775.12, defendant Fultz may be only jointly liable under R.C. 1775.14(B).

As a result of our determination that defendant Fultz may be held only jointly liable, the Ohio Supreme Court's holding in *Wayne Smith Constr. Co., Inc. v. Wolman, Duberstein & Thompson* (1992), 65 Ohio St.3d 383, 604 N.E.2d 157, is applicable to the instant case. The court stated:

"Accordingly, the partners who are jointly liable have the right to demand payment of the third party's claim from their joint assets (*i.e.*, partnership assets) before their personal property can be called upon to satisfy that contractual debt. The early common law in Ohio held accordingly: 'Equity will not lend its aid to subject the separate property of a partner to the payment of partnership debts while the joint property of the firm is unexhausted.' *Hubble v. Perrin* (1827), 3 Ohio 287, 290 * * *.

" * * *

" * * * A partnership creditor in proceedings in execution of a judgment against the partnership must first exhaust partnership property before resorting to the personal assets of partners under R.C. 1775.14(B)." *Id.* at 390–391, 604 N.E.2d at 163.

Accordingly, we find that the trial court was correct in determining that plaintiffs' action against defendant Fultz was premature. Thus, we find plaintiffs' sixth assignment of error not well taken.

In the seventh assignment of error, plaintiffs argue that the trial court erred in finding that defendant Penn acted neither as an agent nor as a developer in the sale of the condominium units.

R.C. 5311.27(B) states that "[a]ny developer or agent who sells a condominium ownership interest in violation of section 5311.25 or 5311.26 of the Revised Code shall be liable to the purchaser * * *." The terms "developer" and "agent" are defined in R.C. 5311.01(T) and (U), respectively, as follows:

"(T) 'Developer' means any person who, directly or indirectly, sells or offers for sale condominium ownership interests in a condominium development. 'Developer' includes the declarant of a condominium development and any successor to the declarant who stands in the same relation to the condominium development as the declarant.

"(U) 'Agent' means any person who represents or acts for or on behalf of a developer in selling or offering to sell any condominium ownership interest in a condominium development but the term does not include an attorney at law whose representation of another consists solely of rendering legal services."

Upon review of the affidavits and deposition testimony offered by the parties involved in this lawsuit, we find no evidence that defendant Penn was involved directly or indirectly in the sale of the condominium units, nor did he represent or act for or on behalf of the developers. In fact, plaintiff Smith, the only party to offer testimony on behalf of plaintiffs, stated that he had not spoken to defendant Penn, nor did Penn provide him with any written information prior to the sale.

Plaintiffs argue in their brief, however, that defendant Penn's attendance at a meeting in which the allegedly misleading disclosure statement was discussed supports their contention that he acted as a developer or agent in this sale. To the contrary, Penn's deposition testimony fully negates this contention. Specifically, defendant Penn testified that he did not recall participating or supplying any information for the disclosure statement. In any event, we find, as did the trial court, that Penn's attendance at this meeting does not rise to the level of either direct or indirect involvement in the sale of the condominiums, nor does it amount to a representation on behalf of the developers. Accordingly, we find that the trial court did not err in determining that defendant Penn was not a "developer" or "agent" involved in the sale of the condominiums pursuant to R.C. 5311.26(A).

Plaintiffs further contend that, even if we were to find that defendant Penn was neither an agent nor a developer under the statute, there remains a cause of action against him for fraudulent concealment. However, we find that our determination of plaintiffs' fifth assignment of error, in which we found that plaintiffs have no cause of action for fraudulent concealment, is dispositive as to this contention. As there exists no genuine issue of material fact regarding defendant Penn's alleged involvement in the sale of the condominium units, we find summary judgment proper and, thus, plaintiffs' seventh assignment of error is not well taken.

By the eighth assignment of error, plaintiffs contend that the trial court erred in holding that privity was a requirement for the claims of the plaintiffs who did not purchase their condominium units directly from Arbor Village, Ltd. It is undisputed that these plaintiffs did not buy their condominium units from any of defendants named in this lawsuit. Indeed, affidavits filed by the individual defendants in this action conclusively demonstrate that defendants neither supplied information to nor even spoke to any of these plaintiffs prior to their purchases.

Plaintiffs, however, claim that R.C. 5311.27, which vests a damage claim in a "purchaser" or "prospective purchaser" of a condominium ownership interest, eliminates the requirement of privity with the developer of the condominiums because a "prospective purchaser" by definition cannot be in privity with the developer, yet "prospective purchasers" are not barred from the remedies available in R.C. 5311.27. However, this argument fails to consider the portion of R.C. 5311.27 that states that a developer or agent who "sells" a condominium interest in violation of R.C. 5311.25 or 5311.26 shall be liable to a purchaser. The class of defendants in R.C. 5311.01 is limited to those developers or agents who

actually sell to a "purchaser," or offer to sell to a "prospective purchaser." Thus, as the record in this case reflects that there is no genuine issue of material fact as to the defendants in this action either selling or offering to sell condominium ownership interests to these plaintiffs, we find that summary judgment was proper as to plaintiffs' statutory claims.

Plaintiffs further contend that privity is not a requirement for their claims for fraudulent concealment. However, we find that our determination of the fifth assignment of error, in which we found that plaintiffs have no cause of action for fraudulent concealment, is dispositive as to this contention. Thus, we find plaintiffs' eighth assignment of error not well taken.

For the foregoing reasons, we sustain plaintiffs' first assignment of error as it relates to the trial court's error in granting summary judgment as to the 1985 causes of action under R.C. 5311.26, and as to the Arbor Village Condominium Association's standing to sue, but overrule the claimed errors as to the trial court's grant of summary judgment on all other issues. We sustain the second assignment of error as it relates to the trial court's grant of summary judgment as to the 1985 causes of action under R.C. 5311.26, but overrule the errors claimed as to the 1984 causes of action under R.C. 5311.26. We sustain the third and fourth assignments of error and overrule the fifth, sixth, seventh and eighth assignments of error. Thus, the judgment of the Franklin County Court of Common Pleas is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

BOWMAN and DESHLER, JJ., concur.