BETSY ROSS FOODS, INC., APPELLEE, *v.* AKRON, CANTON & YOUNGSTOWN RAILWAY CO., D.B.A. A. C. & Y. RAILROAD, APPELLANT.

(No. 11054—Decided November 2, 1983.)

*Mr. Joseph F. Hutchinson, Jr.,* for appellee.

*Mr. Ronald B. Lee,* for appellant.

REECE, J. Defendant-appellant, Akron, Canton & Youngstown Railroad Company (hereinafter "Railroad"), is a public rail carrier regulated by the Interstate Commerce Commission. Under I.C.C. regulations, the Railroad is subject to Freight Tariff PHJ-6004-L which sets the rules and charges for general railroad car demurrage.

"Demurrage charges" are assessments charged for railroad cars retained by a consignee for more than a prescribed period of time.

Plaintiff-appellee, Betsy Ross Foods, Inc. (hereinafter "Betsy Ross"), is a food distribution corporation in Akron, Ohio, and its railroad siding is served by the

Railroad. It is also subject to Tariff PHJ-6004-L.

In 1954, Betsy Ross and the Railroad entered into an "Average Demurrage Agreement," which is sanctioned by the tariff, and provides that Betsy Ross may pay demurrage on a monthly basis instead of a daily one.

In July 1979, in contemplation of a Teamster's strike and a possible labor slow-down, Betsy Ross diverted most of its incoming shipments from trucking to rail. Because of this increase a backlog of railroad cars was created which was not resolved until September 1979. Railroad cars were actually placed by the Railroad as well as constructively placed.

The tariff defines "constructive placement" as:

"When a car consigned or ordered to a private track, * * * cannot be actually placed because of a condition attributable to the consignor or consignee, such car will be held at destination, or * * * at an available hold point and notice shall be sent or given the consignor or consignee that the car is held * * *."

Both actual and constructive placement start demurrage charges. The charges stop when a car is released, *i.e.,* unloaded, and the railroad is notified.

The backlog of cars caused unusual demurrage charges.

Betsy Ross paid the demurrage charges billed for June 1979. After demurrage charges for the months of July and August 1979, for the sums of $16,040 and $8,620, respectively, were billed, representatives of the two companies met and negotiated credits to Betsy Ross for $1,800 for missed switches (railroad error) in July and for $2,400 for August 1979. Additional credits were given for September 1979 in the amount of $710.

Following a runaround calculation by the Railroad, pursuant to the tariff, the final bill to Betsy Ross was $21,760.

A runaround occurs when the railroad, according to the tariff, "actually places cars recently tendered ahead of cars previously tendered." In such a situation "demurrage will be charged on the basis of the amount that would have accrued but for such error."

The adjusted bill was paid under protest by Betsy Ross.

Betsy Ross sued the Railroad to recover the demurrage charges paid under protest and for punitive damages.

The case was tried without a jury and the court, after dismissing the claim for punitive damages, entered judgment for Betsy Ross in the amount of $6,700.

Findings of fact and conclusions of law were ordered from, and submitted by, the parties. The court adopted, by its order of May 23, 1983, the findings of fact and conclusions of law as filed by Betsy Ross.

The judgment was timely appealed.

### Assignment of Error I

"The court below was without subject matter jurisdiction to adopt Betsy Ross' calculation of credit because it implicitly contained a runaround calculation which was in violation of Tariff PHJ-6004-L."

Both parties agree that a runaround calculation is governed by, and must be figured according to, Tariff PHJ-6004-L.

Appellant argues that John Cook, the receiving manager for Betsy Ross, in calculating the amount of credit for demurrage charges, implicitly calculated runaround charges which could only be done in accordance with the tariff. This is so, appellant contends, because Cook started his calculations by placing the various railroad cars in the order of their constructive placement. This makes it a runaround and not an average demurrage calculation and, therefore, the court could not adopt that figure as demurrage.

Appellee asserts that in order to calculate the proper demurrage charges which would have accrued without the Railroad's switching errors, there has to be a constant starting point and that point is the order of constructive placement of the cars. Working from there, the de-

murrage charge can be figured without concern for runaround.

Section 1400 of Tariff PHJ-6004-L provides for refunds of demurrage charges for, among other items, railroad error, in addition to runaround.

A reading of the transcript of proceedings shows that there was sufficient evidence to support the trial court's conclusion that the calculation was one for demurrage charges and not runaround and to support the express finding of fact that "Mr. Cook's calculation is an accurate approximation of what the actual demurrage charges would have been for July and August, 1979 had the Railroad properly switched."

This assignment of error is overruled.

## Assignment of Error II

"The court below was in error in granting judgment in favor of Betsy Ross because, as a matter of law, it failed to meet its burden of proof."

The parties agree that the elements which must be proved by the consignee, Betsy Ross, in a case such as this are set forth in the case of *Union Pacific RR. Co. v. Bartlett & Co., Grain* (W.D. Mo. 1975), 393 F. Supp. 1347, 1353, as follows:

"(a) there was sufficient capacity on the consignee's siding for additional cars;

"(b) the consignee had the actual ability to have unloaded the additional cars had they been placed on its siding; and

"(c) the railroad failed to place sufficient cars on the consignee's siding, even though other cars were being held on constructive placement and were available for unloading."

To establish these elements, the appellee relied on the testimony and exhibits presented by its official, Cook.

The trial court specifically found Cook's testimony to be credible and that the charts he presented clearly supported his testimony.

An appellate court does not weigh the evidence and pass upon its sufficiency but will ascertain from the record whether there is some competent evidence to sustain the findings of the trial court. *Ross* v. *Ross* (1980), 64 Ohio St. 2d 203 [18 O.O.3d 414]. See, generally, 5 Ohio Jurisprudence 3d (1978) 171, 202, Appellate Review, Sections 594 and 605, and cases cited therein.

A review of Cook's testimony shows that there was competent evidence to support the elements which appellee was required to prove and upon which the trial court could, and did, rely.

This assignment of error is overruled.

## Assignment of Error III

"The court below committed error in adopting Betsy Ross' calculation of demurrage credit, which resolved any and all doubts in favor of Betsy Ross, since such calculation was not a reasonable interpretation of Tariff PHJ-6004-L."

Besides reiterating that Betsy Ross' calculation takes into account runaround (which was dealt with in Assignment of Error I), appellant argues here that the calculation was inherently unreasonable, primarily because it was not performed according to Interpretation 869 of the American Association of Railroads.

Both parties cite and emphasize the case of *Lukens Steel Co.* v. *Consolidated Rail Corp.* (Oct. 30, 1979), I.C.C. Dec. No. 37198, affirmed May 16, 1980, unreported.

Appellant maintains that the *Lukens* case only affirmed the proposition from the earlier case of *Central States Corp.* v. *Chicago, Burlington & Quincy RR. Co.* (1953), 288 I.C.C. 73, to the effect that Interpretation 869 is the proper method to calculate credits in situations such as this one.

Appellee argues that although the administrative law judge in *Lukens* ruled that the interpretation is "intrinsically reasonable," the I.C.C. court held that Interpretation 869 is not part of Tariff PHJ-6004-L, and, therefore, not binding in these situations involving railroad error.

In *Lukens, supra,* the court held:

"Interpretation 869 is contained in Association of American Railroads * * * 45-A, and is not part of Tariff ICC PHJ 6004-L. Items 1430 and 1435 of the tariff * * * are the pertinent provisions concerning relief from demurrage caused by railroad error. Whether these tariff items provide an allowance for delays in actual placement of cars already on constructive placement is a matter of tariff interpretation in a particular factual situation. Interpretation 869 * * * is solely the railroads' interpretation of one instance of the application of Items 1430 and 1435."

The court went on to reaffirm that a consignee must prove the elements set forth in *Bartlett, supra,* to recover demurrage charges. If the method used in meeting this requirement is reasonable under the factual situations, it would appear to be also permissible.

The trial court herein specifically found that "since Interpretation 869 does not take into account the effect of an improper switch and does not take into account the actual effect of a missed switch, it is not a fair and reasonable calculation of what demurrage would have accrued but for such error."

As indicated in Assignment of Error I, there is sufficient evidence, which the trier of the fact found credible, to support the conclusion that the calculation used was approximately accurate and reasonable.

Because the law permits a determination of reasonableness and that determination has been made based upon sufficient evidence, we will not disturb the result.

Accordingly, this assignment of error is overruled.

## Assignment of Error IV

"The court below committed error in not holding that Betsy Ross had a duty to prevent the shipment of cars which continued and increased the accumulation of demurrage."

The problem with this assignment of error is simply that the issue in this case is not whether Betsy Ross should have incurred, or continued to incur, demurrage charges but, rather, what is the proper and reasonable method of calculating demurrage charges which were incurred.

Betsy Ross wanted the cars and the Railroad agreed to supply them.

The case of *National Trucking & Storage Co.* v. *Pennsylvania RR. Co.* (C.A.D.C. 1955), 228 F.2d 23, cited by appellant, is distinguishable in that it is not clear whether the trucking company wanted the accumulation of cars which occurred and which provided the basis for the disputed demurrage charges.

This assignment of error is overruled.

## Assignment of Error V

"The court below committed error by holding that A. C. & Y. had a duty to switch Betsy Ross on the weekends."

Appellant argues that the trial court erred in reaching the conclusion that the Railroad was estopped from claiming it had no duty to switch on the weekends because there were insufficient facts on which to base that conclusion.

While numbered Paragraph 9 of the "Findings of Fact and Conclusions of Law" adopted by the trial court may have mingled fact and law into what is designated a finding of fact, it is clear that the court based the conclusions on the acceptance of the testimony of the Railroad's official that weekend switches would be made and the testimony of Betsy Ross' official that he relied upon the promise.

Even if the trial court's inclusion of the terminology, "A. C. & Y. is estopped from claiming it had no duty to unload on Saturday or Sunday," within that finding is troublesome, it is not error.

The Ohio Supreme Court, in *State, ex rel. Cities Service,* v. *Orteca* (1980), 63 Ohio St. 2d 295, 299 [17 O.O.3d 189], restated this principle:

"Equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another

to change his position in good faith reliance upon that conduct. * * *"

There is sufficient evidence for the trier of fact to reach that conclusion.

This assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and GEORGE, J., concur.

REECE, J., of the Court of Common Pleas of Summit County, sitting by assignment in the Ninth Appellate District.