DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas in a dispute involving the sale of residential real estate. Because we conclude that the trial court's decision was supported by the evidence and law, we affirm.
In February 1997, appellants, Robert and Janet Scott, sold their house to appellees, Mark and Deborah Gedert. Robert Scott, a contractor and partner in a construction company, built the home himself. Within three weeks after moving into the home, the Gederts began experiencing moisture problems in the basement and in other areas of the home; they also experienced difficulties with the plumbing. Upon further investigation, the Gederts discovered that Scott had failed to obtain final inspections on certain parts of the home and had never been issued an occupancy permit, as required by local building codes. An examination by a county building code inspector revealed that, in order to receive a "health and safety permit" as a substitute for the original occupancy permit, the structure would have to meet current building code standards which estimates later indicated would cost in excess of $53,000.
In June 1997, appellees intervened in a suit which was instituted to dissolve the construction business of Robert Scott ("Scott") and his brother; the business was in the nature of a partnership. The instant action was ultimately severed and set to be determined prior to any further proceedings in the partnership dissolution.
At trial, Mrs. Gedert, a real estate agent since 1983, and Mr. Gedert, a civil engineer, testified that during their pre-sale inspections in October and November 1996, they had asked appellants about signs of water damage in various areas, including ceilings in the garage and basement, as well as areas near an interior chimney. Appellants explained that this damage was due to burst frozen pipes or water leaks from some shingles that had blown off the roof. Appellees accepted appellants' assurances that the problems had been fixed and the areas only needed cosmetic repairs. Appellees also noticed that the floor in the master bedroom had a sag in it. Appellants explained that during the original construction, a sagging beam had been installed but had gone unnoticed until the second floor framing was completed. Scott said that, since the flaw did not affect the structural integrity of the house, he and his wife had opted to just "live with it."
Appellees testified that they moved in during early March 1997, and almost immediately experienced problems in the house. The second floor and basement toilets leaked, due to improper installation or damaged parts. When the toilet in the second floor bathroom was pulled for repairs, the subfloor showed long-term water damage. This deterioration necessitated the floor's replacement prior to reinstallation of the toilet. The floor around the basement toilet was also damaged due to leakage.
About three weeks after appellees moved in, water ran down the side of a basement wall and puddled on the floor during the first rainfall. Appellees also noticed, when looking out the kitchen window, that water poured through the wooden soffits which ran under the eaves of the roof. When Mr. Gedert closely examined one of the soffits, it gave way due to heavy wood rot. Other areas also indicated previous water damage, such as stains under the edges of the carpeting and black mold and water stains behind the vanity in one of the bathrooms. Appellees also testified that green mold had begun growing on exterior areas of the house, indicating a moisture problem.
Appellees testified that appellants failed to indicate any current water problems or reveal any code violations on the required disclosure form. Appellees also testified that they had relied not only on the disclosure form, but on the fact that Scott was a professional contractor who had built his own home. Appellees acknowledged that, because of their own experience in real estate, they did not have a pre-sale independent house inspection performed. However, on their visits to the home prior to purchase, there had been nothing to indicate such extensive water damage, other than the areas discussed with appellants. Appellees stated that even though the water damage was latent, they believed appellants knew or should have known that such damage was present.
Appellees then presented testimony from county inspectors that the house did not meet current building code standards. County records showed that the initial rough inspections for the wood framing and plumbing inspections were completed, as well as final inspection for the heating and cooling systems. However, the final inspections as to electrical, plumbing, and the completed building had not been done, and an occupancy permit was never issued. The county records indicated that inspectors made attempts to complete these inspections but, for unknown reasons, were "refused entry." One inspector testified that if a home had passed all its inspections but had no occupancy permit, an owner would probably not have to bring the home up to current code. In this case, he stated that, although the home may have passed a rough inspection in 1986, it did not have final inspections on several components. Thus, in order to obtain a current health and safety permit, the home would have to have meet current code regulations, including structural changes to beams and joists to conform with the approved house plans. The inspector acknowledged that approximately thirty percent of current new homes do not have occupancy permits and it does not prevent the transfer of a property. Although he could not opine the effect on the value of a home without such a permit, he noted that failure to have the permit is a code violation.
A contractor testified that the cause of the water damage was due to improper flashing on the exterior of the home between the cedar siding and the brick wainscoting. This area had only been caulked, which permitted water to run down between the brick and the inside walls, causing the wood siding to rot along the edge of the brick. The contractor also noted that the drip edges on areas of the roof had been installed incorrectly, allowing water to run back up under the shingles, causing damage to the roof and soffit areas. He noted that the rotted wooden areas indicated that the water problem had been occurring for a lengthy period of time. Another contractor testified as to the cost of bringing the structure up to code by installation of steel beams and additional joists.
In defense, appellants denied that they knew of any water damage. Although Scott admitted knowing that he had not applied for or received an occupancy permit, he insisted that it is standard practice in the industry to sometimes fail to obtain such a permit. He stated that he had never received any official notice of any code violations in the home. Scott claimed that, since the changes made to the structure had been approved according to 1986 code requirements by the rough structure inspection, the house should not have to meet current code standards. He further stated that appellees were aware of any sagging in the floors at the time they inspected the home. Appellant denied any misrepresentation or failure to disclose material information to appellees.
Appellants also offered expert testimony from a contractor. The contractor testified that it is standard industry practice not to apply for occupancy permits. However, the contractor acknowledged that it was a code violation and that building codes take precedence over standard industry practices. He also acknowledged that he had not actually inspected the home, but based his testimony on floor plans and information supplied by appellants and the county inspection report.
Ultimately, the trial court determined that appellants had failed to disclose material defects in the home regarding water damage and the absence of an occupancy permit. Further, the court determined that, although the home may have met code regulations in 1986, the damages claimed by appellees also resulted from appellants' failure to construct the home in a workmanlike manner. The court then awarded appellees $53,041 in damages.
Appellants now appeal that judgment, setting forth the following three assignments of error:
"ASSIGNMENT OF ERROR NO. 1
 "The Trial Court committed reversible error in entering a finding that the Appellants failed to construct the residential home at 7363 Sawmill Run in a workmanlike manner thereby awarding Appellees a monetary Judgment for Negligent construction of the same.
"ASSIGNMENT OF ERROR NO. 2
 "The Trial Court's findings and Judgment that the Appellees sustained their Burden of Proof in their action for Fraudulent Concealment was erroneous and constituted reversible error.
"ASSIGNMENT OF ERROR NO. 3
 "The Trial Court's award of damages in favor of the Appellees and against the Appellants was against the manifest weight of the evidence, an abuse of discretion and contrary to law."
 I.
We will address appellants' second assignment of error first. In that assignment, appellants argue that the trial court erred in awarding damages based upon the failure to disclose certain defects to appellees.
In determining whether sufficient evidence was presented to prove a civil claim, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court. SeasonsCoal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. When resolving a manifest weight of the evidence claim, the function of an appellate court is not to weigh the evidence and pass upon its sufficiency. Betsy Ross Foods, Inc. v. Akron, Canton YoungstownRy. Co. (1983), 13 Ohio App.3d 145, 147. The reviewing court may not usurp the function of the trier of fact by substituting its judgment for that reached by the trier of fact. See Simon v. LakeGeauga Printing Co. (1982), 69 Ohio St.2d 41. This deferential review "is premised upon the fact that it was the trier of fact who had the best opportunity to view the witnesses, observe their demeanor, gestures and voice inflections and, ultimately, assess and evaluate their credibility." United Ohio Ins. v. Gray (Oct. 5, 1992), Brown App. No. CA92-05-010, unreported, citing to SeasonsCoal, supra.
R.C. 5302.30 (D) requires that the seller of residential real estate disclose certain conditions and information about the property prior to sale, which would include known water problems or building code violations. Failure to disclose such conditions may constitute fraudulent concealment. Arbor VillageCondominium Assn. v. Arbor Village Ltd. (1994), 95 Ohio App.3d 499,510. The elements of a fraudulent concealment claim are:
 "`(1) an actual concealment (2) of a material fact (3) with knowledge of the fact concealed (4) with intent to mislead another into relying upon such conduct (5) followed by actual reliance thereon by such other person having the right to so rely (6) with injury result to such person because of such reliance.'" Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 6."
See also, Burr v. Stark Cty Bd. of Commrs. (1986), 23 Ohio St.3d 69
(elements of fraud include concealment of fact where duty to disclose). A buyer may establish a seller's knowledge of latent conditions or problems in a home where evidence is presented that anyone living in the home would have had notice of the problems discovered by the buyer. Bigelow v. Gill-Lafferty (Dec. 2, 1994), Crawford App. No. 3-94-17, unreported. An occupancy permit, a building code requirement, has been held to be a material condition which adds to the value of a home. Roll v. Reagan (May 10, 1993), Montgomery App. No. 13527, unreported. Therefore, if a seller knows that a home lacks an occupancy permit, such information affects the value of the home and must be disclosed to the buyer.
In this case, it is undisputed that Scott, as the builder of the home, knew that he had not received a final inspection or an occupancy permit. Therefore, since he had actual notice that a code violation existed, the trial court properly found that appellants concealed a condition which materially affected the value of the home.
The record also shows that water problems with the structure occurred simultaneously with the first rainfall after appellees moved into the home. Evidence and expert testimony revealed that the water damage in the home was both extensive and of long duration, i.e. water stains under edges of carpet, multiple layers of caulking between exterior bricks and wood siding which was heavily rotted, water running from rotted wooden soffits below the eaves, rotted areas of the roof from improperly installed drip edges, mold growing on both interior and exterior walls, and rotted sub-flooring from leaking toilets.
In addition, since Scott was the builder and performed maintenance on the home, he, therefore, had actual knowledge of the construction details and knew or should have known that moisture problems were occurring in various areas of the home. Although appellants denied prior knowledge of these conditions, the trial court's determination reveals that, based upon the severity of the problems, appellants knew of and failed to disclose these indicators of latent water problems. Since this is an issue of credibility, we decline to disturb the trial court's findings.
Accordingly, appellant's second assignment of error is not well-taken.
 II.
Appellants, in their first assignment of error, contend that the trial court erred in awarding appellees damages for negligent construction.
A builder of a home may be held liable for latent defects which occur as a result of a failure to construct in a workmanlike manner. Mitchem v. Johnson (1966), 7 Ohio St.2d 66, paragraph three of the syllabus. This liability was extended to subsequent purchasers even where there was no privity of contract between the original builder and that purchaser. McMillan v.Brine-Harpenaw-Torbeck Builders (1983), 8 Ohio St.3d 3, syllabus. A builder, who has superior knowledge of need for final inspections and permits, has been held liable for damages resulting from failure to obtain such inspections and permits. SeeGriffin v. T.K. Harris Co. (Aug. 3, 1998), Stark App. Nos. 1997 CA00408 and 1998 CA00033, unreported.
In this case, appellant Scott, as the builder of the home, is liable to appellees for any latent defects due to a breach of his duty to construct in a workmanlike manner. Testimony and evidence was presented which established that Scott failed to construct the home properly and failed to obtain final inspections and an occupancy permit.
Because of that failure, appellees must either incur additional costs in order to obtain a health and safety permit, or continue to be in violation of the building code. They must also disclose this flaw to any subsequent buyer. Despite appellants' argument that appellees need not perform all the claimed repairs, the testimony of the county inspectors shows otherwise. Therefore, we conclude that the evidence supported the trial court's award of damages for failure to construct in a workmanlike manner.
Accordingly, appellants' first assignment of error is not well-taken.
 III.
Appellants, in their third assignment of error, argue that the trial court's judgment was against the manifest weight of the evidence.
As we previously noted, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as against the manifest weight of the evidence. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. In this case, despite the conflicting testimony, the record contains competent, credible evidence that appellees' damages were due either to appellants' failure to disclose material conditions affecting the property or to Scott's negligent construction, i.e., failure to obtain the proper inspections and permits and failure to employ adequate building methods. Therefore, based upon this and our discussions in the first two assignments of error, we conclude that the trial court's decision was not against the manifest weight of the evidence. Accordingly, appellant's third assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellants.
JUDGMENT AFFIRMED.
 _______________________________ Melvin L. Resnick, J.
 _______________________________ James R. Sherck, J.
 _______________________________ Richard W. Knepper, J.
CONCUR.