DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} Dorothy Stewart purchased a house with a septic system that put her through "ten years of hell." After she finally discovered the multiple causes of her problem, she sued the house's former owners, their realtor, and her past and present neighbors. She also sued the county health department because it had approved the system before she purchased the house. The trial court denied Ms. Stewart's claims against the county because it was immune from liability and denied her remaining claims as barred under the applicable statutes of limitations. This Court affirms in part because Ms. Stewart's claims for damages were either *Page 2 
time-barred or without merit. This Court reverses in part because Ms. Stewart's claim for injunctive relief against the county health department was not ripe and, therefore, should have been dismissed without prejudice instead of adjudicated on the merits, and because her request for declaratory relief was properly filed.
 FACTS {¶ 2} In March 1994, Ms. Stewart purchased a home in Creston, Ohio. Because a former tenant mentioned that he could sometimes smell the septic system, Ms. Stewart conditioned her purchase of the home on the county health department inspecting and approving the system. Otherwise, Ms. Stewart purchased the home "AS IS."
 {¶ 3} When the septic system was installed in 1958, it was designed so that effluent from the septic tank would flow into a leach field that ran beneath a neighboring vacant wetland property. When the county attempted to inspect the system, it could not find the system's outlet. Ms. Stewart has claimed this was because the sellers' realtor provided the county with an altered diagram of the system's layout. The county notified the sellers that they should locate the outlet, replace the septic tank lid, and call for reinspection. The sellers' realtor allegedly dug a hole and removed some drain tiles, making it appear that the drain ended on the sellers' property and that the effluent flowed into the hole and down to the street, passing through a ditch that was on the neighboring property. The county *Page 3 
reinspected and approved the system, merely instructing the sellers to place an animal guard at the end of the drain.
 {¶ 4} The sellers only gave Ms. Stewart a copy of the second inspection report. Relying on the county's approval, Ms. Stewart completed her purchase of the house, but immediately began having problems with the septic system. When a drain near her washing machine backed up, Ms. Stewart hired a company to empty the septic tank. When her problems continued, she hired a drain cleaning service that found that tree roots had penetrated into her system's drain tiles. Acting on the cleaning service's advice, Ms. Stewart replaced most of the drain tiles that ran from her house to the septic tank. This solved her problem for awhile.
 {¶ 5} Sometime between July 1994 and March 1996, Ms. Stewart's toilet stopped flushing properly and her sink stopped draining properly. She called the drain cleaning service again, but it did not find any problems. Ms. Stewart disassembled and attempted to clean out her toilet and sink, but this did not solve the problem either. She also replaced more of the drain tiles that ran from her house, but this also did not help. In 1996, Ms. Stewart noticed that the hole where her effluent emptied had deteriorated. She, therefore, began occasionally dredging the ditch that ran down to the street to improve drainage from the hole.
 {¶ 6} In 2002, Ms. Stewart began wondering if it was the hole itself that was contributing to her drainage problems and hired an environmental consultant *Page 4 
to investigate. The consultant identified three problems. He found that the hole and ditch solution, that the sellers' realtor had allegedly rigged, was not draining properly. He also found that Ms. Stewart's neighbors had filled in part of their vacant property and constructed a driveway that had damaged Ms. Stewart's leach field and prevented her system from draining properly. Finally, he found that the driveway prevented surface water on Ms. Stewart's property from flowing across the neighbors' property. Although the neighbors had built a small culvert to facilitate drainage, it was too small and had not been properly maintained. This caused surface water to pool on Ms. Stewart's property and, because the ground was so wet, prevented the part of the leach field that was on her property from working properly.
 {¶ 7} In 2003, Ms. Stewart sued the former owners of her property, their realtor, and her neighbors. In 2004, the county health department tested Ms. Stewart's septic system and discovered that it was discharging improperly into the ditch on her neighbors' property. The county notified Ms. Stewart that she had 30 days to correct the nuisance, but did not take any action against her.
 {¶ 8} Ms. Stewart voluntarily dismissed her first action, but refiled it in 2005. Her second lawsuit added the county health department as a party, as well as the new owner of the neighboring property. Ms. Stewart asserted claims of trespass, nuisance, negligence, fraudulent concealment, fraudulent misrepresentation, fraud, intentional infliction of emotional distress, breach of *Page 5 
contract, and breach of warranty. Ms. Stewart sought compensatory damages, an injunction preventing the county from taking any action against her, and a declaration granting her an easement across her neighbor's property, so that her septic system could be repaired.
 {¶ 9} The defendants all filed motions for summary judgment. The trial court granted their motions, concluding that Ms. Stewart's claims were barred by the applicable statutes of limitations and that the county health department was immune from liability. Ms. Stewart has appealed, assigning three errors.
 SUMMARY JUDGMENT {¶ 10} Ms. Stewart's first assignment of error is that the trial court incorrectly granted summary judgment for the defendants because there were genuine issues of material fact in dispute regarding whether her claims are barred by the applicable statutes of limitations. In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co., 66 Ohio App. 3d 826, 829
(1990).
 STATUTE OF LIMITATIONS {¶ 11} Under Section 2305.09 of the Ohio Revised Code, there is a four-year statute of limitations for trespass actions, fraud actions, and any other tort action for injury or damage to real property. Under Section 2305.06, there is a *Page 6 
fifteen-year statute of limitations for contract actions. "The application of a statute of limitations presents a mixed question of law and fact. Determination of when a plaintiffs cause of action accrues is to be decided by the factfinder. But, in the absence of such factual issues, the application of the limitation is a question of law."Cyrus v. Henes, 89 Ohio App. 3d 172, 175 (1993), rev'd on other grounds by Cyrus v. Henes, 70 Ohio St. 3d 640, 1994-Ohio-185.
 TRESPASS AND NUISANCE {¶ 12} Ms. Stewart has argued that her trespass and nuisance claims were timely filed because she did not discover the defendants' wrongful conduct until 2002. "Tort actions for injury or damage to real property are subject to the four-year statute of limitations set forth in R.C. 2305.09(D)." Harris v. Liston, 86 Ohio St. 3d 203, paragraph one of the syllabus (1999). The limitations period begins to run "when it is first discovered, or through the exercise of reasonable diligence it should have been discovered, that there is damage to the property."Id. at paragraph two of the syllabus; see Sexton v. Mason, ___ Ohio St. 3d ___, 2008 Ohio 858, at ¶¶ 52-53 (concluding Harris's discovery rule applied to nuisance and trespass actions).
 {¶ 13} Ms. Stewart has asserted that her former neighbors created a nuisance by dumping tons of fill on their property. This buried the original outlet for her septic system, crushed the leach field drain tiles that ran through their property, altered the flow of her septic system, and caused her property to flood. *Page 7 
Her current neighbor has allowed those conditions to continue. Ms. Stewart has asserted that the realtor for her house's former owners compounded the problem by digging a hole on her property that further altered the flow of her septic tank effluent. She has also asserted that she did not discover the problems until she received her environmental consultant's report.
 {¶ 14} At her deposition, Ms. Stewart testified that she had problems with her house's septic system from the time she moved there in 1994, and that she had standing water on her property since at least 1996. Ms. Stewart also testified that, although she believed her former neighbors continued to fill in areas of their property after she purchased her house, they had not raised the overall level of their property since that time. Regarding the realtor's conduct, Ms. Stewart testified that she went out to the drainage ditch in March or April 1994 and saw that someone had recently created the hole on her property and displaced some drain tiles.
 {¶ 15} A permanent trespass or nuisance "occurs when the defendant's tortious act has been fully accomplished, but injury to the plaintiff's estate from that act persists in the absence of further conduct by the defendant." Reith v. McGill Smith Punshon Inc., 163 Ohio App. 3d 709,2005-Ohio-4852, at ¶ 49. In contrast, a continuing trespass or nuisance "results when the defendant's tortious activity is ongoing, perpetually creating fresh violations of the plaintiffs property rights." Id.; seeHaas v. Sunset Ramblers Motorcycle Club Inc., *Page 8 132 Ohio App. 3d 875, 878 (1999). A continuing trespass or nuisance tolls the expiration of the statute of limitations. Sexton, 2008-Ohio-858, at ¶ 54.
 {¶ 16} The conduct that allegedly created the nuisance in this case occurred mostly at or before the time Ms. Stewart bought her house. While Ms. Stewart testified that her neighbors continued placing some fill on their property after she moved in, it did not raise the elevation of that property. Ms. Stewart, therefore, has asserted a permanent, rather than a continuing, nuisance or trespass. This Court concludes that there is no genuine issue of material fact that Ms. Stewart, through the exercise of due diligence, should have been aware of the damages to her septic system and property in 1996, at the very latest. Accordingly, the four year statute of limitations period for her nuisance and trespass claims expired in 2000. Because Ms. Stewart did not file her action until 2005, the trial court correctly determined that those claims were barred under Section 2305.09(D) of the Ohio Revised Code.
 FRAUD {¶ 17} Ms. Stewart has next argued that her fraud claims were timely because she did not discover that the septic system was defective until 2002 and did not discover that the realtor had given the county health department an altered diagram of its layout until 2004. Section 2305.09
of the Ohio Revised Code "specifically provides a discovery rule for actions based on fraud. . . ." Grant Thornton v. Windsor HouseInc., 57 Ohio St. 3d 158, 161 (1991). "[T]he four- *Page 9 
year limitations period does not commence to run on claims presented in fraud . . . until the complainants have discovered, or should have discovered, the claimed matters." Investors REIT One v. Jacobs,46 Ohio St. 3d 176, paragraph 2b of the syllabus (1989).
 {¶ 18} Ms. Stewart knew there was water backing up into her house as early as 1994. She should have been aware of the problems with her septic system and with water pooling in her yard in 1996, at the latest. Regarding the altered diagram, it is undisputed that the original septic system plans are a public record and were on file with the county health department. Ms. Stewart could have viewed the plans at any time after she first began having septic system problems. She admitted during her deposition that she knew the plans were public records, but stated that she did not seek them out. Nevertheless, she was on constructive notice of their contents. See Security Trust Co. v. Ford, 75 Ohio St. 322, 334
(1906) ("a public record is constructive notice of what the record may properly contain"). Accordingly, because Ms. Stewart should have known of the defendants' allegedly fraudulent acts by 1996, the district court did not err when it determined that her fraud claims were barred under Section 2305.09(C) of the Ohio Revised Code.
 BREACH OF CONTRACT/WARRANTY {¶ 19} Ms. Stewart has next argued that, even if she discovered the problems with her septic system in 1994, her breach of contract/warranty claim *Page 10 
was timely because it was subject to a 15-year limitations period under Section 2305.06 of the Ohio Revised Code. Count II of Ms. Stewart's complaint primarily set forth the allegedly fraudulent misrepresentations that the former owners of the house made about its septic system. When the former owners asserted that the fraudulent misrepresentation claim was untimely, Ms. Stewart argued that Count II also supported a claim for breach of contract/warranty. In their reply brief, the former owners responded to the breach of contract/warranty claim, asserting that, even if such a claim existed, no breach had occurred.
 {¶ 20} Regardless of whether Ms. Stewart's complaint raised a timely claim for breach of contract/warranty, this Court is required to affirm the trial court's judgment if any valid grounds are determined on appeal to support it. McKay v. Cutlip, 80 Ohio App. 3d 487, 491 (1992). "When a buyer contractually agrees to accept real property "as is," the seller is relieved of any duty to disclose that the property was in a defective condition." Kaye v. Buehrle, 8 Ohio App. 3d 381, paragraph one of the syllabus (1983). The purchase agreement Ms. Stewart signed contained a provision stating that the "[property is sold in its present `AS IS' condition." Accordingly, even if Ms. Stewart alleged a timely breach of contract/warranty claim, she cannot satisfy its elements as a matter of law.
 INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS {¶ 21} Ms. Stewart has next argued that her intentional infliction of emotional distress claim was timely filed. The statute of limitations for an *Page 11 
intentional infliction of emotional distress claim is four years.Yeager v. Local Union 20, 6 Ohio St. 3d 369, 375 (1983), abrogated on other grounds by Welling v. Weinfeld, 113 Ohio St. 3d 464 (2007).
 {¶ 22} "[A] cause of action for intentional infliction of emotional distress does not accrue until the tort is complete, that is, at the time the injury is incurred and the emotional impact is felt." Biro v.Hartman Funeral Home, 107 Ohio App. 3d 508, 514 (1995). "Stated differently, no injury is incurred until the plaintiff learns of defendant's alleged tortious conduct; it is then that the plaintiff suffers severe emotional distress." Karlen v. Carfangia, 11th Dist. No. 2000-T-0081, 2001 WL 589381 at *7 (June 2, 2001). In addition, "[t]he four year statute of limitations is governed by the discovery rule."Brown v. Bright, 7th Dist. No. 668, 1998 WL 668738 at *3 (Sept. 21, 1998) (applying discovery rule to intentional infliction of emotional distress claim).
 {¶ 23} Ms. Stewart has asserted that her intentional infliction of emotional distress claim was timely because her injury was continuous in nature. Her claim, however, was based on the same conduct as her nuisance, trespass, fraud, and breach of contract/warranty claims. Because that conduct was complete when Ms. Stewart purchased her house, her intentional infliction of emotional distress claim accrued at the same time. Ms. Stewart's statement that she suffered "ten years of hell" from 1994 to 2004 further demonstrates that she began feeling the emotional impact of her injuries in 1994. Regarding the discovery rule, Ms. Stewart knew, *Page 12 
or should have known, about the defendants' allegedly tortious conduct by 1996. The district court, therefore, did not err when it concluded that her intentional infliction of emotional distress claim was barred under Section 2305.09(D) of the Ohio Revised Code.
 INJUNCTIVE RELIEF {¶ 24} Ms. Stewart has next argued that the trial court erred when it denied her claim for injunctive relief. In her complaint, Ms. Stewart asked the court to enjoin the county health department from taking any action against her for her improperly discharging septic system. Ms. Stewart has conceded that, because the county has not taken any action against her, her request for relief was not ripe. She has asserted, however, that the trial court should have dismissed her claim without prejudice instead of granting the county summary judgment on the merits.
 {¶ 25} "In order to be justiciable, a controversy must be ripe for review." Keller v. Columbus, 100 Ohio St. 3d 192, 2003-Ohio-5599, at ¶ 26. "[T]he ripeness requirement is designed . . . `to protect . . . agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" Ohio Forestry Ass'n Inc. v. Sierra Club,523 U.S. 726, 732-33 (1998) (quoting Abbott Laboratories v. Gardner,387 U.S. 136, 148-149 (1967)). Furthermore, "[it is] the long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been *Page 13 
exhausted." Jones v. Chagrin Falls, 77 Ohio St. 3d 456, 462 (1997) (quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51
(1938)).
 {¶ 26} The county health department threatened action against Ms. Stewart but did not take any actual action against her. Ms. Stewart's request for injunctive relief, therefore, was not ripe. "Where a cause is not ripe for judicial review, a court has no jurisdiction to consider it." Grimes v. Grimes, 173 Ohio App. 3d 537, 2007-Ohio-5653, at ¶ 32. Accordingly, because Ms. Stewart's claim for injunctive relief was not ripe, the trial court should have dismissed that claim instead of granting the county summary judgment on it.
 EASEMENT {¶ 27} Ms. Stewart has next argued that the trial court erred when it denied her claim for declaratory relief. She requested that the trial court declare that she has an easement over her neighbor's property, so that she can repair the drain tiles for her septic system's leach field. She has asserted that her claim was properly filed.
 {¶ 28} "An easement is an interest in the land of another which entitles the owner of the easement to a limited use of the land in which the interest exists." Szaraz v. Consol. R.R. Corp., 10 Ohio App. 3d 89,91 (1983). The Supreme Court of Ohio has held that easements "may be acquired only by grant, expressed or implied, or by prescription."Trattar v. Rausch, 154 Ohio St. 286, paragraph two of the syllabus (1950). This Court, however, has concluded that easements may *Page 14 
also be created by estoppel. Maloney v. Patterson, 63 Ohio App. 3d 405,410 (1989).
 {¶ 29} The defendants did not address Ms. Stewart's request for an easement in their motions for summary judgment and have not briefed the issue on appeal. Accordingly, they have failed to establish that Ms. Stewart's request for declaratory relief was untimely or that they were entitled to judgment on it as a matter of law. See Waldeck v. City ofNorth College Hill, 24 Ohio App. 3d 189, 190 (1985) (noting that an action seeking a declaration of rights "does not present the best situation for determination by summary judgment"). Ms. Stewart's first assignment of error, therefore, is overruled as to her claims for damages but sustained as to her claims for injunctive and declaratory relief.
 PERSONAL JURISDICTION {¶ 30} Ms. Stewart's second assignment of error is that the trial court erred when it dismissed the company that employed her property's former owners' realtor. Although the realty company argued in its motion for summary judgment that it should be dismissed because Ms. Stewart had not perfected service on it during her first lawsuit, the trial court did not grant the company's motion on that ground. Instead, it determined that the realty company was entitled to judgment on the merits as a matter of law. Ms. Stewart's argument, therefore, is moot. Her second assignment of error is overruled. *Page 15 
 GOVERNMENTAL IMMUNITY {¶ 31} Ms. Stewart's third assignment of error is that the trial court erred when it concluded that the county health department was entitled to immunity. In her complaint, Ms. Stewart sought damages against the county health department for not inspecting her septic system properly at the time she purchased the house. The county's allegedly negligent actions occurred in 1994 and were discoverable by Ms. Stewart by 1996. Her claim for damages, therefore, is time-barred under Section2305.09(D) of the Ohio Revised Code. Accordingly, whether the county health department is entitled to governmental immunity on her negligence claim is moot. See App. R. 12(A)(1)(c). Ms. Stewart's third assignment of error is overruled.
 CONCLUSION {¶ 32} Ms. Stewart's damages claims are time-barred or without merit; her request for injunctive relief against the county health department should have been dismissed without prejudice; and her request for an easement over her neighbor's property should have been allowed to proceed. Ms. Stewart's first assignment of error is sustained as to her claim for injunctive and declaratory relief but overruled as to her other claims. Her second and third assignments of error are overruled as moot. The judgment of the Wayne County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded for further proceedings. *Page 16 
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to all parties equally.
CLAIR E. DICKINSON FOR THE COURT
 SLABY, P. J. MOORE, J. CONCUR *Page 1