[Cite as *Loveland City School Dist. Bd. of Edn. v. Symmes Twp. Bd. of Trustees*, 2018-Ohio-1731.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BOARD OF EDUCATION OF THE LOVELAND CITY SCHOOL DISTRICT, | : | APPEAL NOS. C-170407 C-170419 |
| and | : | TRIAL NO. A-1601492 |
| STATE EX REL. BOARD OF EDUCATION OF THE LOVELAND CITY SCHOOL DISTRICT, | : | *O P I N I O N.* |
| Plaintiffs-Relators-Appellants/Cross-Appellees, | : | |
| vs. | : | |
| BOARD OF TRUSTEES OF SYMMES TOWNSHIP, | : | |
| and | : | |
| SYMMES TOWNSHIP, OHIO, | : | |
| Defendants-Respondents-Appellees/Cross-Appellants. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in C-170407; Appeal Dismissed in C-170419

Date of Judgment Entry on Appeal: May 4, 2018

*Ennis Britton Co., LPA*, and *Gary T. Stedronsky,* for Plaintiffs-Relators-Appellants/Cross-Appellees,

*Squire Patton Boggs (US) LLP*, *Scott A. Kane* and *Joseph P. Ashbrook*, for Defendants-Respondents-Appellees/Cross-Appellants.

**MOCK, Presiding Judge.**

{¶1} Plaintiffs-relators-appellants/cross-appellees Board of Education of the Loveland City School District and State ex rel. Board of Education of the Loveland City School District (collectively "Loveland School Board") filed a complaint against defendants-respondents-appellees/cross-appellants Board of Trustees of Symmes Township and Symmes Township, Ohio, (collectively "Symmes Township") in which they sought a declaratory judgment, a writ of mandamus and injunctive relief. The trial court granted summary judgment in favor of Symmes Township on all of Loveland School Board's claims because they were barred by the applicable statute of limitations. We find no merit in Loveland School Board's four assignments of error, and we affirm the trial court's judgment. We also hold that Symmes Township's cross-appeal was improper, and we, therefore, dismiss it.

## I.   Factual Background

{¶2} In 1991, Symmes Township passed Resolution No. F-9101, which authorized and approved the Symmes Station Development Tax Increment Financing Project ("STIF") to make infrastructure improvements in the vicinity of Fields Ertel and Montgomery Roads. Resolution F-9101 declared these improvements to be a public purpose and authorized a 100 percent real-property-tax exemption for more than 90 acres of privately-owned property. The resolution also stated that the exemption was to last for 30 years, subject to earlier termination upon the retirement of the tax-increment debt.

{¶3} In April 1993, Symmes Township passed resolution F-9303, which authorized the issuance of notes for the purpose of financing the public

improvements. Symmes Township entered into service agreements with the owners of the real property in late 1993.

{¶4} Under those agreements, owners of the real property made service payments called PILOT payments in lieu of paying real-estate taxes. Those payments were paid into a special tax-increment-equivalent fund to pay for the construction of the specified public improvements. The agreements stated that they would expire on the earlier of December 31, 2010, or "the day following the date on which the final payment of principal * * * and interest on the Bonds or any refunding issues thereof is made or deemed to be made to a trustee for the benefit of the holder or holders thereof." Even after the service agreements expired, Symmes Township continued to collect PILOT payments from the property owners.

{¶5} The tax-increment-equivalent fund was pledged as security for the principal and interest on the notes authorized in Resolution F-9303. The debt owed on the notes was guaranteed solely by the tax-increment-equivalent fund.

{¶6} The development of the property subject to the STIF was successful. It was ultimately developed into a number of retail establishments and a large apartment complex.

{¶7} In 2003, Symmes Township passed Resolution F-0303 to amend Resolution F-9101 to specify additional public infrastructure improvements that could be funded by the STIF. It subsequently adopted Resolutions F-0304, F-0305 and F-0306, which related to the debt instruments used to fund the public infrastructure improvements. At the time those resolutions were adopted, approximately $400,000 in notes used to finance the original improvements set out in F-9101 were still outstanding, unmatured and unpaid. The township claimed that

it sought to refinance the debt so that it could continue to use the funds generated by the STIF for the additional improvements.

{¶8}   The original STIF notes were special revenue obligations that limited Symmes Township's liability to tax-increment revenue.  Resolution F-0304 provided for the refunding of the outstanding STIF debt with general-obligation bonds.  Those bonds were not secured with PILOT payments from the tax-increment-equivalent fund.  Instead they were secured by "the full general obligation of the Township" and "the faith, credit and revenue of said Township."

{¶9}   Resolution F-0305 authorized Symmes Township to issue bonds for the purpose of park-land acquisition.  Resolution F-0306 authorized it to combine the park-land acquisition debt and the outstanding $400,000 debt from the 1991 infrastructure improvements into a single consolidated bond issue.

{¶10}  The STIF continued to be successful.  It generated funds to pay for the purchase of a park, the construction of a park maintenance building, the construction of a safety center, and the purchase of police and fire equipment.

{¶11} Loveland School Board filed its complaint on March 11, 2016.  It alleged that the "refinancing" of the original STIF debt instruments in 2o03 was actually the retirement of that debt, and that the STIF should have terminated at that time.  It further alleged that the expansion of the scope of the public improvements funded by the STIF in Resolution F-0303 was improper, and that Symmes Township had improperly spent PILOT payments from the tax-increment-equivalent fund on expenditures that were not necessary for the development of the subject property as originally specified in 1991.

{¶12}  Both Loveland School Board and Symmes Township filed motions for summary judgment.  In its motion, Symmes Township argued that it was entitled to

4

judgment as a matter of law because Loveland School Board's complaint was filed outside of the applicable statute of limitations.

{¶13}  The trial court found that the six-year statute of limitations set forth in R.C. 2305.07 for actions "upon a liability created by statute" applied.  The court also found that the cause of action accrued in 2003 when Symmes Township amended the STIF and, as argued by Loveland School Board, failed to terminate the STIF when it refunded the original securities with general-obligation bonds.  Thus, the court determined that the Loveland School Board's claims were time-barred.  It entered judgment in favor of Symmes Township on all counts of Loveland School Board's complaint.  Both parties have appealed the trial court's judgment.

## II.   Improper "Cross-Appeal"

{¶14}  Symmes Township has filed what it refers to as a "cross-appeal," although it was filed under a separate appeal number.  Even if it were a cross-appeal, App.R. 3(C)(1) provides that "[a] person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order * * * shall file a notice of cross-appeal within the time allowed by App.R. 4." App.R. 3(C)(2) further provides that "[a] person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice or cross-appeal or raise a cross-assignment of error."

{¶15}  The trial court granted summary judgment in Symmes Township's favor.  The township does not seek to change the judgment from which Loveland School Board has appealed.  Consequently, its use of a "cross-appeal" to assert its arguments is improper, and we dismiss the appeal numbered C-170419. *See SP9 Ent. Trust v. Brauen,* 3d Dist. Allen No. 1-14-03, 2014-Ohio-4870, ¶ 60-64.

5

Nevertheless, we can still address the township's arguments as we would any appellee's, and we do so where appropriate. *See McCarthy v. Sterling Chemicals, Inc.*, 1st Dist. Hamilton Nos. C-110805 and C-110856, 2012-Ohio-5211, ¶ 9.

### III.  TIFs Generally

{¶16} Tax-increment financing (TIF) is a "method for funding public improvements in an area slated for redevelopment by recapturing, for a time, all or a portion of the increased property tax revenue that may result if the redevelopment stimulates private reinvestment." *Princeton City School Dist. Bd. of Edn. v. Zaino*, 94 Ohio St.3d 66, 68, 760 N.E.2d 375 (2002), quoting Meck & Pearlman, *Ohio Planning and Zoning Law*, Section T 15:29, 704 (2000).  Townships may declare improvements to real property to be exempt from property taxes and to require the owner of the property to make service payments in lieu of the real-property taxes that would have been payable on the improvements had the property not been exempt.  A township that receives service payments in lieu of taxes must establish a public-improvement-tax-increment-equivalent fund and deposit the payments into that fund.  It must use the moneys deposited into that fund to pay the costs of the public improvements or the principal and interest on bonds or notes issued to pay the costs of the public improvements that are necessary for the development of the exempted real property. *Princeton City School Dist.* at 68, quoting 3 Princehorn & Shimp, *Ohio Township Law*, Section T 2.6, 42 (2000).

{¶17}  The General Assembly enacted R.C. 5709.93 et seq., which authorize townships to construct public improvements that will benefit specified parcels of property through TIF programs.  It has empowered townships to redirect tax receipts attributable to the increase in value of the benefited parcels to a fund out of which a township pays for the improvements. *Princeton City School Dist.* at 70.

6

### IV. Former R.C. 5715.27(F) does not Apply

{¶18} We begin our analysis with Symmes Township's argument that the statutory procedure set forth in former R.C. 5715.27(F) provides Loveland School Board's exclusive remedy to challenge the exemption. The township is correct in arguing that a court cannot grant declaratory relief where a special statutory proceeding has been provided for that purpose. *See State ex rel. Taft v. Court of Common Pleas of Franklin Cty.*, 63 Ohio St.3d 190, 193, 586 N.E.2d 114 (1992); *State ex rel. Iris Sales Co. v. Voinovich*, 43 Ohio App.2d 18, 19, 332 N.E.2d 79 (8th Dist.1975). But the statutory procedure on which it relies does not apply in this case.

{¶19} Former R.C. 5715.27(F) stated in pertinent part, "An application for exemption and a complaint against exemption shall be filed prior to the thirty-first day of December of the tax year for which exemption is requested or for which the liability of the property to taxation in that year is requested." This statute limits a board of education to contesting the exemption in the year in which the complaint is filed. It may not contest prior year exemptions. *Toledo v. Levin*, 117 Ohio St.3d 373, 2008-Ohio-1119, 884 N.E.2d 31, ¶ 16; *Olmsted Falls Bd. of Edn. v. Tracy*, 76 Ohio St.3d 386, 388, 667 N.E.2d 1200 (1996).

{¶20} Read in isolation, that provision seems to support the township's position. But when reviewing a statute, a court cannot pick out one provision and dissociate it from the context. It must "look to the four corners of the enactment to determine the intent of the enacting body." *Risner v. Ohio Dept. of Natural Resources*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 12, quoting *State v. Wilson*, 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (1997).

{¶21} Former R.C. 5715.27 was entitled "Right to complain to tax commissioner; notice to school board." Section (A) of the statute stated that

7

"[e]xcept as provided in section 3735.67 of the Revised Code, the owner of any property may file an application with the tax commissioner, on forms prescribed by the commissioner, requesting that such property be exempted from taxation and that taxes and penalties be remitted as provided in division (B) of section 5713.08 of the Revised Code." Section (B) stated that the board of education of any school district could request the tax commissioner to "provide it with notification of applications for exemptions from taxation for property located within that district." Section (C) allowed a board of education that had requested notifications to file a statement with the commissioner and the applicant indicating "its intent to submit evidence and participate in a hearing on any application." In sum, this statute provided a procedure for a property *owner* to request an exemption and for the school board to contest it.

{¶22} On the other hand, former R.C. 5709.73 empowered "a *township* to designate parcels for a public improvement area, to exempt further improvements to these parcels from the real estate tax, and to construct public improvements in the designated areas." (Emphasis added.) *Princeton City School Dist.*, 94 Ohio St.3d at 68, 760 N.E.2d 375. The statute described the actions a township was required to take to set up a TIF, including adopting a resolution, holding a public hearing, and notifying the property owners. *See* former R.C. 5709.73(A) and (B). In certain situations, the board of education had to approve the township's actions. Thus, there would be no need to notify the board of education about the exemption.

{¶23} When the statute is read as a whole, the plain language of former R.C. 5715.27 shows that it did not apply in a situation involving a TIF, which had its own governing statutes. In fact, in *Princeton City School Dist.*, the Supreme Court stated that former R.C. 5709.73, which set forth the criteria for the TIF exemption, "does

8

not provide for any review by the commissioner on whether the declaration of the township is correct." Therefore, the commissioner "could not review the township's decision in passing the resolution; he could only record that the township had passed the resolution and determine that the resolution applied to the years under review." *Princeton School Dist.* at 75. Thus, Loveland School District could not have had the issues raised in its complaint decided under former R.C. 5715.27(F).

{¶24} Finally, the Ohio Supreme Court and this court have decided declaratory judgment actions related to TIFs. *See Sugarcreek Twp. v. Centerville*, 133 Ohio St.3d 467, 2012-Ohio-4649, 979 N.E.2d 261; *Hyde Park Circle, LLC v. Cincinnati*, 2016-Ohio-3130, 66 N.E.3d 99 (1st Dist.). We find no merit to the township's argument that former R.C. 5715.27(F) provided the school district's exclusive remedy.

### V. *Applicable Statute of Limitations*

{¶25} In its first assignment of error, Loveland School Board contends that the trial court erred in concluding that the six-year statute of limitations in R.C. 2305.07 applied. Instead, it contends that the ten-year statute of limitations set forth in R.C. 2305.14 applied. We hold that the trial court applied the correct statute of limitations.

{¶26} First, we address Symmes Township's argument that the two-year statute of limitations for actions against political subdivisions set forth in R.C. 2744.04 applies. "Courts in Ohio have been uniform in the observation that '(b)y its very language and title, (Chapter 2744) applies to tort actions *for damages*.' " (Emphasis sic.) *State ex rel. Fatur v. Eastlake*, 11th Dist. Lake No. 2009-L-037, 2010-Ohio-1448, ¶ 36, quoting *Big Springs Golf Club v. Donofrio*, 74 Ohio App.3d 1, 2, 598 N.E.2d 14 (9th Dist.1991). It has no application to equitable actions.

*Cincinnati v. Harrison*, 1st Dist. Hamilton No. C-130195, 2014-Ohio-2844, ¶ 29-30; *Fatur* at ¶ 36-37; *State ex rel. Johnny Appleseed Metro. Park Dist. v. Delphos*, 141 Ohio App.3d 255, 258, 750 N.E.2d 1158 (3d Dist.2001).

{¶27} Loveland School Board's complaint primarily sought equitable relief in the form of a declaratory judgment, injunctive relief, and a writ of mandamus. Though it also sought an award of money damages, it was seeking to recover money to which it contends that it was entitled under the TIF statutes, but for Symmes Township's allegedly improper actions. Consequently, the essence of the claim was not money damages, but equitable relief. Therefore, R.C. Chapter 2744 does not apply. *See B.H. v. Ohio Dept. of Adm. Serv.*, 10th Dist. Franklin No. 16AP-747, 2017-Ohio-9030, ¶ 21-25; *State ex rel. Midview Local School Dist. Bd. of Edn. v. Ohio School Facilities Comm.*, 2015-Ohio-435, 28 N.E.3d 633, ¶ 15-16 (9th Dist.); *Interim Health Care of Columbus, Inc. v. Ohio Dept. of Adm. Serv.*, 10th Dist. Franklin No. 07AP-747, 2008-Ohio-2286, ¶ 15-17.

{¶28} We also find no merit in Loveland School Board's argument that the ten-year statute of limitations set forth in R.C. 2305.14 applies. R.C. 2305.14 states that "[a]n action for relief not provided for in sections 2305.04 to 2305.131 and section 1304.35 of the Revised Code shall be brought within ten years after the cause thereof accrued." It is a catch-all provision that Ohio courts have generally applied to equitable actions. *State ex rel. Lien v. House*, 144 Ohio St. 238, 244-245, 58 N.E.2d 675 (1944); *Schlabach v. Kondik*, 3d Dist. Harrison No. 16 HA 0017, 2017-Ohio-8016, ¶ 19; *Seitz v. Stevenson*, 4th Dist. Pickaway No. 97 CA 42, 1998 WL 328413, *6 (June 16, 1998); *Biggins v. Garvey*, 90 Ohio App.3d 584, 606, 630 N.E.2d 44 (11th Dist.1993).

{¶29} R.C. 2305.07, on the other hand, provides a six-year statute of limitations for a "liability created by statute other than a forfeiture or penalty." An action upon a liability created by statute is "one that would not exist but for the statute." *McAuliffe v. W. States Import Co., Inc.*, 72 Ohio St.3d 534, 538, 651 N.E.2d 957 (1995); *Miller v. Lincoln Hts.*, 1st Dist. Hamilton No. C-110276, 2011-Ohio-6722, ¶ 8.

{¶30} The statute of limitations to be applied is determined from the essential ground or gist of the complaint. *Kunz v. Buckeye Union Ins. Co.*, 1 Ohio St.3d 79, 80-81, 437 N.E.2d 1194 (1982); *Chateau Estate Homes, LLC v. Fifth Third Bank*, 1st Dist. Hamilton No. C-160703, 2017-Ohio-6985, ¶ 11. Though Loveland School District sought equitable relief, all of its claims were based on the statutory sections governing TIFs.

{¶31} Loveland School Board argues that its claims were not based on the statutes, but on the language of the resolutions authorizing the STIF in 1991 and 1993 and the resolutions amending the STIF in 2003. But without the statutes authorizing townships to create TIFs, Symmes Township could not have enacted the resolutions. Without the statutes, Loveland School Board's claims would not exist. Therefore, R.C. 2305.07 applies. The ten-year statute of limitations set forth in R.C. 2305.14 does not apply, because that statute specifically states that it only applies to actions for relief not provided for in R.C. 2505.04 to 2305.131. Consequently, we overrule Loveland School Board's first assignment of error.

## VI. Accrual of the Cause of Action

{¶32} We discuss the remainder of Loveland School Board's assignments of error out of order. In its third assignment of error, Loveland School Board contends that the trial court erred in concluding that the cause of action accrued in 2003 when

11

the township amended the original 1991 STIF to add additional public infrastructure improvements. It argues that a new cause of action accrued each time an additional expenditure from the tax-increment fund was actually made. This assignment of error is not well taken.

{¶33} As a general rule, a cause of action accrues at the time the wrongful act is committed. *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 128 Ohio St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672, ¶ 13; *Chateau Estate Homes*, 1st Dist. Hamilton No. C-160703, 2017-Ohio-6985, at ¶ 13. It is only in narrow circumstances that exceptions are made to this rule. *LGR, Realty, Inc. v. Frank & London Ins. Agency*, ___ Ohio St.3d ____, 2018-Ohio-334, ____ N.E.3d ____, ¶ 26. A cause of action arising from a statute accrues when the violation of the statute occurs. *Younker v. Citizens Commercial Bank & Trust Co.*, 3d Dist. Mercer No. 10-04-05, 2004-Ohio-4162, ¶ 19; *Arbor Village Condominium Assn. v. Arbor Village, Ltd., L.P.*, 95 Ohio App.3d 499, 506, 642 N.E.2d 1124 (10th Dist.1994); *Perry v. Cincinnati*, 1st Dist. Hamilton No. C-880451, 1989 WL 107588, *3 (Sept. 2o, 1989).

{¶34} The alleged statutory violation occurred in 2003 when Symmes Township amended the STIF and, according to Loveland School Board, improperly expanded the scope of the public improvements funded by the STIF. Further, according to Loveland School Board, at that time Symmes Township retired the debt, causing the termination of the STIF. Thus, the cause of action accrued at that time.

{¶35} Loveland School Board's complaint was not filed until March 11, 2016. Therefore, it was filed well after the expiration of the six-year statute of limitations provided for in R.C. 2305.07. Even if we would have accepted Loveland School Board's argument that the ten-year statute of limitations set forth in R.C. 2305.14

applied, the complaint was still filed well after the expiration of the statute of limitations.

### A. Continuous-Violation Doctrine

{¶36} In its second assignment of error, Loveland School Board contends that the trial court erred in finding that the continuous-violation doctrine did not apply. It argues that the failure to terminate the STIF in 2003 when the tax-increment debt was retired allowed the township to continue to collect the PILOT payments, which deprived the school district of its tax revenue. This assignment of error is not well taken.

{¶37} Loveland School Board relies upon *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, which involved a takings claim resulting from flooding caused by a spillway on a lake. The Ohio Department of Natural Resources ("ODNR") had constructed a new spillway to replace one that was inadequate. After the construction of the new spillway, ODNR considered the lake to be self-regulating and stopped drawing down the water annually or as needed. Also, after the construction of the spillway, nearby landowners had suffered from persistent flooding.

{¶38} The plaintiffs filed their complaint in 2009. The state argued that the actions that would have fixed liability were completed when the spillway was built in 1997 and that the plaintiffs knew or should have known of damage by 2003, when a catastrophic flood had occurred. *Id.* at ¶ 36. In rejecting the state's argument, the Ohio Supreme Court stated that "[i]n construing the statute of limitations for actions for trespass upon real property, we have held that if a trespass is continuing rather than a single completed act, the limitations period is tolled." *Id.* at ¶ 37. The court held that "[w]hen an action carried out on the actor's own land causes continuing

damage to another's property and the actor's conduct or retention of control is of a continuing nature, the statute of limitations is tolled." *Id.* at paragraph two of the syllabus.

{¶39} The court reasoned that "the 'defendant's ongoing conduct or retention of control is the key' to distinguishing a continuing trespass, which tolls a statute of limitations, from a permanent trespass, which does not." A continuing trespass occurs when there is " 'some continuing or ongoing allegedly tortious activity attributable to the defendant. A permanent trespass occurs when the defendant's allegedly tortious act has been fully accomplished.' " *Id.* at ¶ 44, quoting *Sexton v. Mason*, 117 Ohio St.3d 275, 2008-Ohio-858, 883 N.E.2d 1013, ¶ 45.

{¶40} The court further stated that "a cause of action against the government does not accrue until 'all of the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence.' " *State ex rel. Doner* at ¶ 48, quoting *State ex rel. Nickoli v. Erie MetroParks*, 124 Ohio St.3d 449, 2010-Ohio-606, 923 N.E.2d 588, ¶ 34. Thus, whether the plaintiff had notice of the alleged tortious activity is relevant in determining when the cause of action accrued.

{¶41} In rejecting Loveland School Board's argument, the trial court relied on *Painesville Mini Storage, Inc. v. Painesville*, 124 Ohio St.3d 504, 2010-Ohio-920, 924 N.E.2d 357. In that case, the plaintiff had filed a petition for a writ of mandamus to compel a city to commence an appropriation proceeding for the alleged taking of plaintiff's property through the issuance of a building permit. The Ohio Supreme Court found that the complaint was filed outside the alleged applicable statute of limitations.

{¶42} The court in that case stated that "the continuous-violation doctrine did not toll the statute of limitations, because the city did not perform any additional challenged actions after it issued the permit. Every event that occurred thereafter 'was merely a continuation of the effects of that solitary event rather than the occurrence of new discrete acts.' " *Id.* at ¶ 3, quoting *Nickoli* at ¶ 33; *see State ex rel. Lee v. Plain City*, 12th Dist. Madison No. CA2017-01-002, 2017-Ohio-8931, ¶ 27-29 (sewers and other infrastructures constitute a permanent trespass of which the property owners had notice at the time they were put in place with no further action by the village); *Byers DiPaola Castle, LLC v. Portage Cty. Bd. of Commrs.*, 2015-Ohio-3089, 41 N.E.3d 89, ¶ 43 (11th Dist.) (the present effects of a single past action do not trigger a continuing-violations exception to the statute of limitations).

{¶43} The trial court found that the events that occurred after 2003 were a continuation of the effects of the 2003 amendment and the expansion of the STIF. Loveland School Board argues that *State ex rel. Doner* applies, and not *Painesville Mini Storage*, because Symmes Township exercised sole control over the STIF by continuing to collect PILOT payments and continuing to use the tax-increment fund to make expenditures. Thus, all of the events that fixed the township's liability could not have occurred in 2003, and the continuing-violation doctrine applies.

{¶44} We disagree. In *State ex rel. Doner*, the alleged tortious activity was continuing in that ODNR controlled the waterway and failed to draw down the lake as needed. Thus, the tortious activity remained in the control of ODNR.

{¶45} In this case, the alleged tortious activity was the 2003 amendment of the STIF to expand it for allegedly improper purposes and the failure to terminate it when the debt on the original notes was paid. All of the tortious activity occurred in 2003. The continued collection of the PILOT payments and continued expenditures

15

from the tax-increment fund flowed from that alleged tortious activity. The township had no authority to continue to collect the payments or make expenditures out of the fund without the authorization provided by the amendment of the STIF. Any of its actions after 2003 were the result of the allegedly improper amendment of the STIF and the failure to terminate it. Thus, the tortious activity was completed in 2003, and the township's acts after 2003 were merely a continuation of the effects of the 2003 amendment.

{¶46} We also cannot ignore the fact that Loveland School Board knew or should have known about the amendment of the STIF more than six years before it filed its complaint. First, the 2003 resolutions were public records and gave notice to Loveland School Board and the public about the expansion of the STIF. *See Stewart v. Allen*, 9th Dist. Wayne No. 06CA0039, 2008-Ohio-1645, ¶ 17-18; *Wendover Road Property Owners Assn. v. Kornicks*, 28 Ohio App.3d 101, 103, 502 N.E.2d 226 (8th Dist.1985).

{¶47} Further, the record shows that Symmes Township held an annual meeting of the Tax Increment Review Council ("TIRC"), which included representatives from the various school districts in the township, including Loveland School District. During those meetings, the township provided a packet of information related to the STIF and discussed the STIF expenditures. Loveland School District actually produced the packet from the 2004 TIRC meeting, which included information regarding new public improvements to be funded by the TIF, including "construction of a new fire/safety building and miscellaneous park improvements." That packet stated that it had been provided to Loveland School Board's representative. The school district's treasurer testified that although he was not at the 2004 meeting, he had attended the TIRC meetings himself and was

16

familiar with the information historically reported by Symmes Township. He also acknowledged that the Loveland School District superintendent had attended TIRC meetings. Thus, the record shows that Loveland School Board had notice in 2004 about the expansion and the continuation of the STIF.

{¶48} Finally, we note that courts have been reluctant to expand the continuous-violation doctrine beyond the original context in which it was applied. *See Byers DiPaola Castle*, 2015-Ohio-3089, 41 N.E.3d 89, at ¶ 45; *Rosenbaum v. Chronicle Telegram*, 9th Dist. Lorain Nos. 01CA0079896 and 01CA007908, 2002-Ohio-7319, ¶ 28-29. Under the circumstances, we hold that the continuing-violation doctrine did not toll the running of the statute of limitations, and the trial court did not err in failing to apply it. We overrule Loveland School Board's second assignment of error.

### B. Delayed-Damage Rule

{¶49} Under its third assignment of error, Loveland School Board also contends that the delayed-damage rule applies. Under that rule, "where the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs." *Flagstar*, 128 Ohio St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672, at ¶ 19; *Chateau Estate Homes*, 1st Dist. Hamilton No. C-160703, 2017-Ohio-6985, at ¶ 14. The delayed-damage rule does not toll the running of the statute of limitations, it adjusts when the cause of action accrues. *Chateau Estate Homes* at ¶ 14.

{¶50} Loveland School Board contends that the statutory violation of the improper expenditure of PILOT payments did not occur until the expenditures were actually made. It argues that most of those expenditures were not contemplated at the time of the 2003 amendment. For example, starting in 2003, Symmes Township

spent $350,000 of the PILOT payments to purchase a park. From 2003 through 2005, it spent about $2,500,000 on a safety-services center. In 2008 and 2009, it spent $360,000 to construct a park maintenance building. Finally, in 2012 and continuing each year through 2016, it spent over $2,000,000 on police and fire equipment. Loveland School Board argues that the damage resulting from any statutory violation did not occur until those expenditures had been made.

{¶51} We find no case law applying the delayed-damage rule where R.C. 2305.07 is the applicable statute of limitations. We also note that the Ohio Supreme Court recently declined to apply the delayed-damage rule in a case involving the four-year statute of limitations set forth in R.C. 2305.09 for negligent procurement of a professional-liability insurance company and negligent representation. *See LGR Realty*, ____ Ohio St.3d ____, 2018-Ohio-334, ____ N.E.3d ____, at ¶ 31. This court reached the same conclusion in *Chateau Estate Homes*, 1st Dist. Hamilton No. C-160703, 2017-Ohio-6985, at ¶ 15-25. Therefore, we decline to apply the delayed-damage rule in this case.

{¶52} Nevertheless, even if the rule does apply, the damage occurred in 2003 when the allegedly overreaching amendment to the original STIF was passed. Without this amendment, the continued expenditures could not have been made. Thus, all of the conduct giving rise to Symmes Township's alleged liability occurred at that time. Consequently, we overrule Loveland School Board's third assignment of error.

### C. Discovery Rule

{¶53} In its fourth assignment of error, Loveland School Board contends that the trial court erred in concluding that the discovery rule did not apply. It argues that it did not know, and could not have known, that Symmes Township had retired

its tax-increment debt until it made a public records request in 2014 for various STIF-related documents. This assignment of error is not well taken.

{¶54} The discovery rule provides that a cause of action does not arise until the plaintiff knows, or by the exercise of reasonable diligence should know, that he or she has been injured by the defendant's conduct. *Flagstar*, 128 Ohio St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672, at ¶ 13-14; *Chateau Estate Homes*, 1st Dist. Hamilton No. C-160703, 2017-Ohio-6985, at ¶ 13. The discovery rule tolls the running of the statute of limitations. *Chateau Estate Homes* at ¶ 13. It is typically applied in tort and medical-malpractice cases, and it is doubtful it would apply to a case under R.C. 2305.07 or 2305.14. *See Miller v. Cloud*, 2016-Ohio-5390, 76 N.E.3d 297, ¶ 52 (7th Dist.); *Wilkerson v. Hartings*, 1st Dist. Hamilton No. C-081160, 2009-Ohio-4987, ¶ 9-11. At least two courts have refused to apply the discovery rule to cases involving statutory violations under R.C. 2305.07. *See Arbor Village Condominium Assn.*, 95 Ohio App.3d at 506, 642 N.E.2d 1124; *Arandell Corp. v. Amer. Elec. Power Co.*, S.D. Ohio No. 2:09-cv-231, 2010 WL 3667004, *7-8 (Sept. 15, 2010).

{¶55} Even if the discovery rule applies, the school district should have known that it was injured by the township's conduct long before 2014. This court has stated that "[n]o more than a reasonable opportunity to discover" the injurious conduct is required to start the running of the statute of limitations. *Wilkerson* at ¶ 15, quoting *Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 454, 635 N.E.2d 1326 (8th Dist.1993). "Information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence." *Id.*

{¶56}  The record shows that Loveland School Board knew in 2004 of the amendment to the STIF and the expansion of the public improvements funded by the STIF.  At that time, it had information sufficient to put it on notice of the possibility of wrongdoing which gave rise to a duty to inquire into the matter.  Thus, the cause of action would have accrued, at the latest, in 2004.  Even if we apply the discovery rule, the complaint was not filed within the six-year statute of limitations.  We overrule Loveland School Board's fourth assignment of error.

### *VII. Summary*

{¶57}  In sum, we find no merit in Loveland School Board's four assignments of error.  We find no issues of material fact.  Construing the evidence most strongly in Loveland School Board's favor, we hold that reasonable minds can come to but one conclusion—that Loveland School Board's claims were time-barred and that Symmes Township was entitled to judgment as a matter of law.  Consequently, the trial court did not err in granting summary judgment in favor of Symmes Township. *See Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977); *Wal-Mart Realty Co. v. Tri-County Commons Assoc., Inc.*, 1st Dist. Hamilton No. C-160747, 2017-Ohio-9280, ¶ 8.  Having overruled Loveland School Board's assignments of error, we affirm the trial court's judgment in the appeal numbered C-170407.  We dismiss the appeal in the case numbered C-170419.

Judgment affirmed in C-170407 and appeal dismissed in C-170419.

**CUNNINGHAM** and **ZAYAS, JJ.,** concur.

Please note:

The court has recorded its own entry this date.